THOMAS ALLEIN vs. NEGRO JIM SHARP.—*June* 1835.

By the act of 1796, ch. 67, sec. 29, a right is given to manumit slaves, of the description therein mentioned, by deed, so that such manumission be not in prejudice of creditors.

This act has furnished the standard by which the *validity* of deeds of manumission is to be tested. The rule is, that they are not available, if made to the prejudice of creditors. The cases of deeds, fraudulent with reference to creditors, either at common law or under the state of *Elizabeth,* do not apply to deeds of manumission.

The *onus probandi* in a cause impeaching the validity of a deed of manumission, as being in prejudice of creditors, is upon the creditor. The slave manumitted by it, is not called upon to prove the grantors solvency, as a condition precedent to his right to freedom.

In a judicial proceeding to determine the invalidity of a deed, the party manumitted is entitled to the assistance of the heir at law, or person holding the real estate of the grantor in taking an account of the amount thereof, before it can be legally ascertained, that the deceased died insolvent, without subjecting the manumitted slave to the payment of his debts.

The judgment of freedom, upon a petition for freedom between a manumitted slave and the administrator of the former master, will not conclude the right of a creditor of the master to show in equity, that the deed of manumission was made in prejudice of creditors.

According to the true construction of the act of 1796, ch. 67, the law charges the whole of a manumitters property with the payment of his debts in favor of his manumitted slave.

An executor who is also a creditor, is not entitled to hold a manumitted slave of his testator debtor, as a slave, or treat him as assets. He must resort to his legal remedy to vacate the deed of manumission.

That remedy is in a Court of Equity, where all persons interested in the real and personal estate of the master, should be made parties where an account will be taken, and a decree passed to sell the manumitted slaves, either for

life, or for a term of years, as circumstances or the nature of the case may require.

Upon a petition for freedom, it belongs to the jury to find, whether the petitioner, at the time of manumission, was under the age of forty-five years, and able to work and gain a sufficient livelihood and maintenance ; and it is error in the County court, where by the form of their instructions, those facts are withdrawn from their consideration, and assumed by the court.

Appeal from Anne Arundel County court.

This was a petition for freedom filed by the appellee, on the 25th of October 1833.

The evidence in the first exception, is sufficiently recapitulated, by his Honor Judge *Stephen,* who delivered the opinion of this court.

In the 2d exception, the defendant prayed the court to instruct the jury, that if they should find from the evidence, that the deed of manumission was executed by *Hutton,* with intent to prejudice and defraud his creditors, being such at the date thereof, and that such creditors are yet unsatisfied, and that there is no estate or assets of said *Hutton,* out of which their said claims can be satisfied, excepting the petitioner, and the other slaves mentioned in the deed of manumission, that then the deed is null and void, and the petitioner has failed to prove his right to freedom. The court (Dorsey, Ch. J. and Kilgour, and Wilkinson, A. J's.) refused to give the instruction, and *the defendant excepted.*

3. The defendant then offered evidence of a judgment against *Hutton,* rendered in the year 1829, upon a bond executed by him in the year 1816, and produced an order from the attorney of the judgment creditor, directed to the clerk of the court, requiring him to enter the same for the use of the said defendant, and although the said entry was not made in consequence of an objection, by a party claiming an interest in the said judgment; the defendant contended that he was to be regarded as the assignee thereof, and consequently as a creditor prior to the date of the deed of manumission, and prayed the court to instruct the jury, that if from the evidence, they should believe, that the deed was executed

13

with intent by said *Hutton* to defraud his creditors, and that the defendant is entitled to the benefit of the aforesaid judgment, and that *Hutton* left no estate, out of which satisfaction for the same could be had, other than the petitioner, and the other slaves in the said deed; that then said deed is fraudulent and void against the defendant, and the petitioner is not entitled to his freedom.    But the court refused to grant the prayer, being of opinion, that although the deed might be fraudulent and void in prejudice of creditors, yet that, that circumstance presented no bar to the petitioners recovery of his freedom from the defendant, upon the proof now before the jury.   *The defendant excepted;* the verdict and judgment being against him, he appealed to this court.

The cause was argued before Stephen, Archer, and Spence, Judges.

Pinkney and Randall for the appellant, contended,

1.  That *Hutton* being insolvent, at the date of the deed, and continuing so to be, and many of his debts due, at that time remaining unpaid, and there being no property for the satisfaction thereof except the negroes, the deed was fraudulent, to the prejudice of creditors, and void, and the appellant as the administrator of *Hutton* had a right to hold the petitioner as a slave.

The petitioner claims under the acts of 1752, ch. 1, sec. 5, and 1796, ch. 67, sec. 29, which prescribes the mode, and the conditions, upon which deeds of manumission shall be executed, and any departure from the terms of these acts, will avoid the deed, even as against the grantor, therein differing from the statute of *Elizabeth*, which only affects its validity in reference to the rights of creditors.    The requisitions of the act must be complied with, or the deed is a nullity. *Burroughs Adm'rs. vs. Negro Anna,* 4 *Harr. and Johns.* 462. *William vs. Kelly,* 5 *Ib.* 59.    *Hamilton vs. Cragg,* 6 *Ib.* 16. *Negro James vs. Gaither,* 2 *Ib.* 176.    *Negro George vs. Cores,* 2 *Harr. and Gill* 1.    If the registration of such a deed is

omitted, it is fatal; Chancery having no power to cure the omission. *Wicks et al, vs. Chew et al,* 4 *H. & J.* 543.

The act of 1729, ch. 8, was before the legislature, when the law of 1796 was passed. By the former, the deeds therein referred to, are only made void with respect to creditors, and therefore when in the latter act, language more comprehensive is employed, the inference is irresistible, that a more enlarged operation was designed. The single purpose of the statutes of *Elizabeth,* and of the act of 1729 was the protection of creditors; but the acts of 1752 and 1796, in addition to that object, were, intended to prescribe a uniform mode of manumission, from which no departure can be permitted. If it be decided, that the deed is good against the master, and those representing him, it is idle to say, it is not also good against the creditors, who are remediless, if the administrator of the master cannot hold the slaves as assets for the payment of his debts. How can the creditor recover a judgment against the administrator in respect of such slaves, if he has no right to hold them as assets for its payment? Besides, how can it be contended, that negroes are free with reference to one class of persons, and slaves as to another class. They must be free as to all the world, or not free at all. There are cases, in which the representatives of grantors, have been permitted to avail themselves of defective conveyances. *Burroughs Adm'r. vs. Negro Anna,* 4 *H. and J.* 262. *Hamilton vs. Cragg,* 6 *Ib.* 16.

2. But if the appellant, as administrator, has no right to hold the appellee as a slave, he has that right as a creditor of the grantor. The act of 1796 in regulating the mode of manumitting slaves, carefully guards the rights of creditors. If the operation of a deed made for that purpose, is to prejudice the rights of creditors, it is fraudulent and void, as well against those, who stood in that relation to the grantor at the time, as those who became such subsequently to its execution. *Roberts on Frauds* 17. *Reade vs. Livingston.* 3 *Johns. Ch. Rep.* 497. *Ib.* 501. *Sexton vs. Wheaton,* 8 *Wheat.* 242.

*Jones vs. Slubey,* 5 *Har. and Johns.* 372.     *Bohn vs. Headley,* 7 *Ib.* 260.

3. If the appellant as a creditor had no right to hold the petitioner as a slave, he certainly was entitled to hold him as administrator, until by his services, or sale, he could obtain satisfaction for his debt.     Being himself the administrator, there was no one to sue—he could not sue himself, and but for the right of retainer, would be without remedy.     3 *Black. Com.* 18. 2 *Ib.* 94.

4. Upon the last exception they insisted, that the appellant was entitled to have had the judgment entered for his use, and that the refusal of court to direct it to be done, is examinable here; and that if such entry had been made, the appellant would have occupied the position of a creditor before, and at the date of the deed.

2. They further contended, that the court below in granting the prayers of the petitioner, *assumed the truth* of the questions of fact, which should have been submitted to the jury. None of these instructions are hypothetical, as they should have been, for although the exceptions say, the petitioner proved so and so, that only means, that he offered proof. *Riggin vs. Patapsco Ins. Co.* 7 *Har. and Johns.* 291. *Mitchell vs. Dall,* 4 *Gill and Johns.* 370.

BREWER for the appellee.

1. The only points before the court, are, whether the defendant, in the capacity of administrator, or creditor of *Hutton,* had the right to hold the petitioner in slavery.   These are the only questions presented by the record; the proof in reference to *Hutton's* former ownership ; the deed of manumission ; and the capacity of the petitioner to take his freedom being uncontroverted.   No other questions were raised in the County court, and none other, can be presented here. The *prima facie* title of the petitioner to his freedom, was plainly established ; and the enquiry is, has that *prima facie* title been defeated, so as to enable the defendant, in either of

the characters in which he presents himself, to deprive him of its enjoyment.

It does not follow, that because the deed may be void, at common law, or under the statutes of *Elizabeth*, as against creditors, that it is also void as to the grantor, and his representatives. On the contrary, at the common law, a deed voluntary, or fraudulent only, is good against him who makes it, and those who claim under him. *Roberts on Frauds* 8. 3 *Coke Rep.* 83. And the statutes of 13th and 27th *Elizabeth*, are merely declaratory of the common law. *Cadogan vs. Kennett, Cowp.* 434. *Hudnal vs. Wilder Ex'r. Teasdale*, 4 *McCord* 297. *Sturtevant vs. Ballard*, 9 *Johns. R.* 339. 1 *Peters Con. R.* 319. *Hamilton vs. Russell*, 1 *Cranch* 309. *Meeker vs. Wilson*, 1 *Gall* 241. And consequently those, and those only, who are injured, can take advantage of the fraud. *Rob. on Frauds* 641. *Cro. Jac.* 270. There are many cases, where voluntary contracts have been sustained by the courts, though prejudicial to creditors, when the creditors themselves do not complain, and this without regard to the capacity in which the volunteer appears in the cases, whether as plaintiff, or defendant. *Colman vs. Croker*, 1 *Ves. Jr.* 160. *Baldwin vs. Cawthorne*, 19 *Ib.* 167. *Steel vs. Brown and Parry*, 1 *Taunt.* 380. *Reichart vs. Castator, et al*, 5 *Binny* 109. *Battersbee vs. Farrington*, 1 *Swanst.* 113. *Dorsey vs. Smithson*, 6 *Har. and Johns.* 61. *Kidd vs. Mitchell*, 1 *Nott and McCord* 339. And there is no distinction so far as this question is involved, between conveyances of real, and contracts affecting the personal estate. The personal representative is bound by the latter, and the heir at law by the former, though made under circumstances which would avoid them as to creditors. *Harris vs. Tremenhere*, 15 *Ves.* 34. 3 *Con. Rep.* 398. *Jackson vs. Garnsey*, 16 *Johns.* 189. *Simon vs. Gibson*, 1 *Yeates* 291. 3 *Massa. Rep.* 573. *Drinkwater vs. Drinkwater*, 4 *Ib.* 354. *Goodwin vs. Hubbard*, 15 *Ib.* 215.

The acts of 1752 and 1796, did not confer the right to manumit, which existed before, but prescribed the *manner* in which it should be exercised; and the provision that it should

not be done to the prejudice of creditors, was merely caution-ary.   The rights of creditors were protected by the principles of the common law.  5 *Call* 342.  It is no answer to say, that it is essential to the preservation of those rights, that the administrator, should be allowed to hold and dispose of the negroes as slaves.   If they may do this, the negroes may be sold into irretrievable bondage, without the intervention of the creditor, who alone has a right to complain.

What species of remedy may be open to the creditor, it will be time enough to decide, when the case shall arise ; but there can be no doubt, a court of Chancery would be competent, and the appropriate tribunal for his relief.   There, and there alone, could the rights of all parties concerned be inves-tigated, and adjusted, upon principles, which would inflict unnecessary injury upon none, whilst protecting the rights of all.

2. If the appellant is to be viewed as a creditor, still he must fail in this proceeding.   The mode he has adopted for the assertion of his rights, is not the proper one.   He has no right to take the negroes into his possession, in that character, to carve for himself.  It would be unjust to the other creditors, as well as the negroes, for the amount of his claim may be greatly below their value ; and the sanction of the court to such a  proceeding, would  lead to the utmost confusion, and scrambling among the creditors themselves, each of whom would endeavor to be foremost in the race after property, thus presented as it were, as a prize for the swiftest.

3. Supposing that the present proceeding is the regular one for testing the validity of the deed of manumission, the question then is, upon whom is thrown the burden of proof.   The deed is certainly good, if not in prejudice of creditors.   Now who is to show that ?  To require the peti-tioner to prove it, would be to make him prove a negative, which is contrary to the general rule of evidence ; and the hardship of constituting this, an exception to the rule, would be greatly aggravated, by the unavoidably entire ignorance of the petitioner of the amount of the grantor's debts, and

the extent, and value of his property; upon both of which subjects, his administrator must be presumed to be well informed.

4. The refusal of the County court to suffer the judgment mentioned in the 3d exception, to be entered for the use of the defendant, is not the subject of an exception, or appeal to this court; but if it was, the refusal, under the circumstances was right.

Stephen, Judge delivered the opinion of the court.

This case comes up on sundry bills of exception taken in the court below, upon the trial of a petition for freedom filed by the appellee against the appellant in that court. The petition is couched in general terms, and states that the petitioner is a free man, and entitled to be at liberty, but that he is detained in custody and claimed as a slave by the appellant.

To this petition the appellant appeared, and pleaded that the petitioner was not free, as alleged in his said petition. The verdict, and judgment was in favor of the petitioner.

Upon the trial of the cause, the petitioner to prove that he was entitled to his freedom, gave in evidence to the jury, that in the year 1819, he was the slave of *Richard G. Hutton*, by whom he was manumitted by deed dated 9th November 1819, the said manumission to commence and take effect, on the 1st of January 1827. The petitioner also proved, that at the time his freedom commenced, according to the provisions of the deed, he was under the age of 45 years, and able to gain a sufficient livelihood, and maintenance, and was going at large and acting as a free man, until the appellee as the administrator of the said *Richard G. Hutton* took possession of him, and returned an inventory in which he was included as a part of said *Hutton's* personal estate. Upon this proof of title to freedom, the petitioner rested his case. The defendant, for the purpose of proving that the petitioner was not entitled to his freedom, proved that said *Hutton* in the year 1819, and for some time before that period, was in insolvent

circumstances, being indebted to an amount exceeding the value of all his property of every description, including the negroes mentioned in the aforegoing instrument of writing, and that he continued to be indebted to the extent of insolvency, until the time of his death, which happened in the year 1832. The defendant also proved that the negroes mentioned in said deed of manumission, always remained in the possession' of said *Hutton* to the period of his death, and afterwards remained in the possession of his widow for several days, until they were discharged by her, when they went at large, until the defendant as administrator took possession of them. The defendant proved, that he was a creditor of said *Hutton* at the time of his death, and at the time the deed of manumission took effect, though not at the date thereof, and that said *Hutton* did not leave any property, out of which he could obtain satisfaction for said claim, other than the said negroes. Upon this evidence the defendant relied, for the purpose of proving that said deed was made with a fraudulent intent, and operated to the prejudice of creditors, and was therefore void. The defendant also proved, that he had returned an inventory to the *Orphan's Court*, in which the petitioner was included as part of the personal estate of said *Hutton*, which had been duly recorded.

Upon this evidence, the counsel for the petitioner prayed the court to instruct the jury, that the defendant was *not*, as administrator of said *Hutton*, entitled to hold said petitioner as a slave, which prayer was granted by the court. The defendant then contended, (after proving that his claim had been passed by the Orphan's court,) that as a creditor of said *Hutton*, he had a right to hold said petitioner in slavery, without further judicial proceedings having been had in relation to his said claim. But the court instructed the jury, that the mere proof of the defendant being a creditor, and the passage of his claim by the *Orphan's Court*, without further judicial proceedings in relation thereto, did not authorize the defendant to hold the petitioner in slavery. The defendant then prayed the court to instruct the jury, that although he might

not as administrator, or creditor, be entitled to hold the peti-
tioner in slavery, yet that he had a right to take such peti-
tioner, and hold, or otherwise dispose of him, so as to raise
by his services or sale, a sufficient sum of money to satisfy
his debt, which instruction the court also refused to give.
Two other exceptions were taken by the defendant in the
course of the trial, but it is not deemed necessary, particularly
to advert to the proof offered in those bills of exceptions, as
according to the principles which we think ought to govern in
the decision of questions of this nature, the court were clearly
right in the opinions expressed in both of them, concerning
the sufficiency of *Hutton's* estate, to pay his debts.

By the act of 1796, ch. 67, sec. 29, a right is given to
manumit slaves, of the description therein mentioned, by deed,
so that such manumission be not in prejudice of creditors.
We do not deem it necessary to examine the various adjudi-
cations which were referred to in the course of the argument,
in relation to deeds or conveyances deemed fraudulent under
the statute of *Elizabeth,* or to ascertain whether this deed
would be considered fraudulent as to creditors, according to
the principles of the common law, upon the evidence given
to the jury in this cause. Is it sufficient to say, that the act
of Assembly granting the power to manumit, has furnished
the standard, by which their legal validity is to be tested;
that rule is, that the deed of manumission shall not be opera-
tive, and available, if made to the prejudice of creditors. A
deed of manumission being therefore inoperative to pass a
title to freedom, if made to the prejudice of creditors, the
question necessarily arises, on whom does the law throw the
burden of proof in such cases. Is it the duty of the petitioner
to prove negatively, that the deed under which he claims title,
will not have that effect, or does the *onus probandi,* rest upon
the creditors, for whose benefit and protection, the clause was
introduced into the law? This we consider not to be a ques-
tion of difficult solution, in the case of manumission by deed,
in the absence of all authority upon the subject. Yet we are
happy to find, that this very question, has engaged the atten-

tion of the Supreme Court of the United States, and has been put to rest.

We hold that in the case of a manumission by deed, the *onus probandi,* is upon the creditor. That the deed is operative and effectual to give freedom to the slave, unless the rights of creditors are injured by it, and that it is not incumbent on the slave to prove, as a condition precedent to effective manumission, that the residue of his master's property was sufficient for the payment of his debts. We think that it never was the intention of the Legislature, when they passed the law authorizing the manumission of slaves by deed, to stay, or suspend the operation of such grant of freedom, until it had been ascertained, as a condition precedent, that it would not operate to the prejudice of creditors. The 29th section of the act says, that a person possessing a slave of the description there mentioned, may manumit him by deed, and that such manumission, may be made to take effect in *futuro,* so that such deed be not in prejudice of creditors. But was it ever supposed that before such deed could take effect, the manumitter must prove either judicially, or otherwise, that he was perfectly solvent, and able to pay all his debts, without resorting to the manumitted slave for that purpose. We conceive that the right of creditors in such a case, would be sufficiently protected, by subjecting the manumitted slaves to the payment of his debts, when in a course of judicial proceedings, it should be made to appear that the residue of his property was not sufficient for that purpose. Such a deed will therefore operate *prima facie* to confer freedom, liable however to be defeated, if proved to have been made to the prejudice of creditors. We think the court below, were therefore right in rejecting the prayers made by the defendant in his several bills of exceptions, so far as the same related to the sufficiency or insufficiency of *Hutton's* estate for the payment of his debts.

Upon the trial of this petition for freedom, the proper parties were not before the court to try the question, whether the deed of manumission had been made to the prejudice of

creditors. The petitioner we think, was entitled to the assist-
ance of the heir at law, or person holding the real estate, in
taking an account of the amount thereof, before it could be
legally, and judicially ascertained, that the deceased died
insolvent, without subjecting the manumitted slave to the
payment of his debts. By a statute of *Maryland,* the real
estate of a deceased debtor, is made subject to the payment
of his debts, in case of the insufficiency of the personal
property for that purpose; but this court have always held
that before a decree could pass for the sale of the real estate,
the executor, or person representing the personal estate, must
be made a party, for the purpose of proving that the personal
estate had been exhausted. Nor was it necessary for the
protection of the rights of creditors, that, that question should
have been tried upon such a petition. The judgment in that
case, would not have concluded the rights of the creditors, in
any future suit, which they might institute in a court of Equity
for the recovery of their claims. The judgment would not
have concluded the right of the creditors from showing, in a
proceeding in Equity, to which the manumitted slaves, the
executors, and all persons interested, might be made parties,
that the estate of the master was insufficient for the payment
of his debts, without resorting to the manumitted slaves for
that purpose, and upon proof of that fact, the court would
decree, that the manumission had been made in prejudice of
creditors, and subject the slaves to the payment of debts,
either by sale for life, or for a term of years, according as the
one, or the other, might be requisite to pay the creditor.
According to our construction of the act of 1796, ch. 67, the
law charges the whole of the manumitter's property with the
payment of his debts, in favour of his manumitted slaves,
because the act of manumission is to be effectual, if not done
in prejudice of creditors; which plainly, and necessarily
implies, that the residue of his property is first to be appro-
priated to the payment of his debts, before the manumitted
slaves can be made liable therefor. We have said, that we
did not deem it necessary to examine the various adjudications

Allein *vs.* Sharp.—1835.

referred to in the argument, respecting deeds or conveyances held to be fraudulent, and void against creditors under the statute of *Elizabeth*, or at common law.    We will however remark, that according to the decision of this court in the case of *Dorsey vs. Smithson*, 6 *Harr. & Johns.* 61, although the deed of manumission should be considered fraudulent and void against creditors, yet that it is binding on the donor and his legal representatives, and is not assets in the hands of his administrator for the payment of his debts.    This case also proves, that the administrator would not be entitled to hold the petitioner in his character of creditor, but must resort to his legal remedy for the satisfaction of his claim.    That remedy, as already remarked, we think must be in a court of Equity, where the whole subject of assets can be fully investigated, the rights of the respective parties protected, and justice fairly and impartially administered to all concerned. Upon the whole we are of opinion, that in the case now before this court, the court below determined correctly, that in that suit, the question whether the estate of the deceased was sufficient to pay his debts, could not be legally decided, so as to bar, or deprive the petitioners of their right to freedom; and that the proper remedy of a creditor in such a case, is by a bill in equity, where the manumitted slaves, and all proper parties, can be brought before the court, and where an account may be taken of all the property of the deceased, both real and personal, and if that should be found inadequate to the payment of his debts, the manumitted slaves may be decreed to be sold for that purpose, either for life, or for a term of years, as circumstances, or the nature of the case might require. But we think the court below erred in granting the prayer of the petitioner in the first bill of exceptions, without referring, or submitting to the jury, to whom it properly belonged to find the facts, whether the petitioner was under the age of forty-five years, and able to work and gain a sufficient livelihood, and maintenance.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.