THOMAS ANDERSON *vs.* REBECCA GARRETT' AND OTHERS.
*June* 1850.

By the law of this State, as far as regards liberation from slavery a negro is regarded as the slave of him by whom he is held in bondage until his right to freedom is established by the judgment of the court competent to try such right.

By the act of 1796, ch. 67, sec. 21. the county court of that county in which the petitioner or petitioners shall reside, under the direction of his, her or their master or mistress, or owner, are exclusively vested with the power of trying the petition for freedom.

In acquiring a residence the slave has no will of his own; his acts unauthorised by his master and his volition, form no ingredient in the constitution of his residence; *its creation and continuance depend entirely upon the acts and intentions of the owner, whose power of changing it at his will and pleasure rests entirely in his own discretion.*

A master apprehending that a family of slaves whom he had permitted, for nearly eighteen years, to live and reside in the city of *Baltimore*, acting as free persons. were about to abscond, seized, and forcibly carried them to another county, beyond the jurisdiction of *Baltimore* county court. HELD: that he had a perfect right thus to change the residence of his slaves, and the court from whose jurisdiction they were thus taken, could not entertain their petition for freedom.

Anderson vs. Garrett, et. al.—1850.

If a master, hearing that his slave is about to file his petition in the county in which he resides, and knowing that the evidence necessary to maintain the petition can be conveniently obtained only in that county, should, in fraud of the jurisdiction of its court, and to prevent a fair and impartial trial of petitioner's claim, remove him to another county, in such case the court of the former county may exercise jurisdiction, and proceed on the petition as if no such removal had been made.

Upon a suggestion for the removal of a petition for freedom, under the 3rd section of the act of 1810, ch. 63, the county court in determining on the sufficiency of the suggestion. is confined to the competent testimony offered in its support, and cannot receive any evidence offered by the opposite party.

The clause of this act which requires the petitioner to be "actually held in bondage" by the person claiming to be owner, and asking for the removal, means a holding in bondage, *in point of fact,* and not a mere legal or constructive holding.

Where the suggestion and affidavits thereto proved that the master actually held in bondage *but one* of the petitioners, while of the others he held only a legal or constructive holding, it was HELD, that the county court properly overruled the suggestion for the removal of the petition of *all* the petitioners.

Though the county court may err in permitting an immaterial and impertinent question to be asked of a witness, and answered, yet if it does not appear to this court that it had any influence on the jury in their finding on the issues, the judgment will not, for this reason, be reversed.

A testatrix desired all her negroes to be liberated, and declares that they are, "by this my will, liberated and set free in the manner and form following:" She then enumerates three who are to be free at her death, and then proceeds, " my negro woman *Beck,* and my negro man *Basil,* to be free at the expiration of four years from the date of my decease," and then enumerates others who were to be free with their increase at the age of twenty-five years. HELD : that the issue of *Beck* have no claim to freedom under this will.

A testatrix executed her will in 1804, and appointed an executor, but desired that no letters of administration be taken out on her estate. HELD : that the isolated fact that the person named as executor sold the rest of the negroes, except the petitioner, belonging to her estate, is not evidence legally sufficient to warrant the jury in finding that such executor acted under letters testamentary, legally granted.

A negro's going at large and acting as free for any length of time, will not, *per se,* be a sufficient foundation to presume a deed of manumission.

No presumption of a deed of manumission is authorised as a matter of law, to be declared by the court, or as a matter of fact to be found by the jury, upon the mere ground that a slave has gone at large and acted as a free-

man, with his master's knowledge, unless such going at large and acting as if free, be for a period of at least twenty years uninterrupted duration.

Abandonment of a slave by the owner, is not a legitimate mode of manumission in this State, nor is it, *per se*, a sufficient foundation for the presumption of a deed of manumission.

An executor as such, has no power in this State to execute a deed of manumission, and no presumption of law or fact that such deed was executed by an executor, can ever arise.

Where a party has pleaded to the jurisdiction, and taken a bill of exceptions to the overruling of the plea, and then offers a prayer to the court founded on the same reasons on which the plea was based, the court is not bound to reiterate its decision, and the refusal to make it by the court's rejecting the prayer, is no ground for reversal of its judgment.

APPEAL from *Baltimore* county court.

*Rebecca Garret* and her five children, by *B. C. Presstman*, their next friend, filed their petition for freedom in *Baltimore* county court, on the 8th of March, 1849, alleging that they were in the custody of *Thomas Anderson*, of *Howard* district, having been forcibly taken from the jurisdiction of said court by *J. C. Anderson*, as agent of said *Thomas*, and that they are entitled to their freedom, which they pray may be inquired of by said court.

The defendant, *Thomas Anderson*,, appeared and pleaded in abatement to the jurisdiction of the court, averring that the petitioners did, at the time of filing their petition, and long before, reside under the directions of the defendant, their master and owner, at *Howard* district of *Anne Arundel* county, out of the jurisdiction of said court. This plea was verified by affidavit, and submitted upon the testimony which had been given in the case of an application for a writ of *habeas corpus*, made by the petitioners against one *J. S. Donovan*, and which it was agreed should be regarded as given in this case, and the facts thereby proved, should be taken as the statement of facts, upon which the question of jurisdiction is to be decided.

This testimony shows on the part of the petitioners, that *Rebecca Garrett*, the mother, came to *Baltimore* about eighteen years ago, where she has continually resided with her children till within a short period prior to the filing of this peti-

tion. That during all this time she was reputed a free woman, and always acted as such, making contracts, renting houses, hiring herself out and receiving her own wages, hiring out her children and receiving pay for their services, and raising and supporting her family by her own industry. That shortly before the filing of their petition, *Isaac J. Anderson*, the son of defendant, with several police officers, came to the house of petitioners at night, seized and hand-cuffed them, and carried them off the the residence of defendant, in *Howard* district.

On the part of the defendant, it was proved that he claimed the petitioners as his slaves, the mother, *Rebecca*, having been given to his wife at five or six years of age. That he had permitted them to live as they had for many years, until recently, when having heard that one of them was about to escape into *Pennsylvania*, he did, acting under the advice of counsel, seize and take them into his possession as stated above. That immediately upon doing so, he addressed a letter to petitioners counsel, stating that *Howard* district court was about to sit, and inviting him to bring suit for freedom in that court. Upon this evidence, the court, (FRICK, C. J., and LE GRAND, A. J.,) overruled the plea and directed the defendant to answer over, to which judgment the defendant took his first exception.

2ND EXCEPTION. The defendant then filed a suggestion in writing for removal, stating "that about twenty years ago, he held the said *Rebecca* in possession in *Howard* district of *Anne Arundel* county, (then *Anne Arundel* county,) as his slave for life, that not having constant employment for her, he permitted her to live with her husband, one *William Garrett*, a free negro. That several years afterwards, said *William Garrett* being about to remove to the city of *Baltimore*, *Rebecca* applied to defendant for permission to accompany her husband. That defendant for some time refused to let her go, but afterwards agreed to hire her to her husband, and he took her with him to reside in the city of *Baltimore*. That by this agreement, the said *William Garrett* promised to pay a certain sum, yearly, for the services of *Rebecca*, and defendant reserved to himself the right at any time, to take and remove

her, or any child or children she might afterwards have, from the possession of the said *William Garrett*, without any previous notice. That all the petitioners mentioned as the children of said *Rebecca*, were born after this agreement was made. That for several years the said *William Garrett* continued to pay the sum stipulated in the agreement, but defendant, in consideration of the expense and trouble of supporting his large family of children, did not exact afterwards the payment of the same from him. That defendant frequently supplied *Rebecca* and her children with provisions and whatever else necessary to their support, his farm afforded. That all the said petitioners were thus held in actual bondage by defendant. That petitioners resided in the city of *Baltimore* by permission of defendant, their owner. That defendant was not at the time of filing said petition, and never has been a resident of *Baltimore* county, but always has resided in *Howard* district of *Anne-Arundel* county. The defendant, therefore, prays your honors to order and direct the record of proceedings on said petition to be transmitted to the court of *Howard* district of *Anne Arundel* county."

This suggestion was verified by the affidavit of the defendant, and also by that of *J. C. Anderson*, who swore that he was present when the agreement between defendant and *William Garrett* was made. It was then agreed upon the hearing of this motion for removal, that the testimony already on file in the case, (being that upon which the plea to the jurisdiction was submitted,) may be read in evidence, subject to legal exceptions. The defendant then offered to support his suggestions by the oral testimony of said *J. C. Anderson*, but the court decided that the oral examination was unnecessary. The motion was then submitted and overruled by the court, to which defendant excepted.

The defendant then pleaded. 1st. That petitioners were not free. 2nd. That they are not lineally descended in the female line from a free woman. And upon these pleas, issues were joined. The case was then tried, and the petitioners on their part, first proved substantially the same facts as those upon

which the plea to the jurisdiction was submitted, and then offered in evidence the will of *Sarah Cord,* executed on the 10th of September, 1805, containing among others the following clause.

" *Item.* My will and desire is, that all my negroes be liberated and set free, and is by this my will liberated and set free from bondage, in the manner and form following: that is to say, that my negro man *Tom,* my negro man *Joshua,* and my negro woman *Phebe,* be free to all intents and purposes, from the date of my decease; my negro woman *Beck,* and my negro man *Basil,* to be free at the expiration of four years from the date of my decease, my negro boy *Levi,* my negro boy *David,* my negro girl *Seny,* my negro girl *Mariah,* my negro girl *Elizabeth,* my negro girl *Matilda,* my negro boy *Elias,* my negro child *William,* all and each of them to be free when they arrive at the age of twenty-five years, them and their issue or increase forever.''

The testatrix appointed her son, *John Cord,* her sole executor, and desired that no letters of administration should be taken out on her estate, but that her will should be proved and lodged in the register of wills office for *Anne Arundel* county, and there be recorded.

The petitioners further proved that *Rebecca Garrett,* the petitioner, was the daughter of *Beck,* mentioned in this will, and was claimed as well as the other negroes named therein as *Mrs. Cord's.* And further, that *John Cord,* named as executor of *Sarah Cord,* sold the rest of the negroes.

Defendant then proved, by *W. H. G. Dorsey, Esq.,* that he had carefully examined the records of the register of wills' office, of *Anne Arundel* county, where said *Sarah* lived and died, and where her property was, for letters testamentary, or of administration on her estate, and found that none had been ever granted to any one.

It was then agreed that this evidence shall be made part of each exception of plaintiff or defendant.

3RD EXCEPTION. In the course of the trial, the defendant having asked a witness whether the petitioner was not married,

and had a husband, to which witness answered, that she had, and his name was *William Garrett*, the counsel for petitioners then proposed to ask the witness what was the character of said husband, to which defendant objected; but the court overruled the objection, and allowed said question to be asked, which was asked, and the witness answered the question to the jury, to which opinion of the court the defendant excepted.

4TH EXCEPTION. The plaintiffs and defendants having given the evidence as stated above, the petitioners made the following prayers:

1. That if the jury find that the petitioner, *Rebecca Garrett* was the slave of *Sarah Cord* at the time of her death, and that said *Sarah* before her death, duly made and executed the last will and testament, given in evidence, and that said *Rebecca*, at the time of the death of said *Sarah*, was under forty-five years of age, and capable to earn a sufficient livelihood, and that the other petitioners are the children of said *Rebecca*, born since the death of said *Sarah*, then petitioners are entitled to their freedom.

2. If the jury find that *Sarah Cord* made her will as stated in the preceding prayer, and that *Rebecca*, one of the petitioners, and mother of the others, is the daughter of negro woman *Beck*, mentioned in said will, then petitioners are entitled to their freedom.

4. If the jury find that *Sarah Cord* made her will as stated in the first prayer, and by said will appointed *John Cord* the executor thereof; and that said *John Cord*, after the death of *Sarah*, and in or prior to the year 1819, sold personal property left by the said *Sarah*, and acted in reference to said property as executor. The jury may presume, from the lapse of time and all the evidence in this case, that said *John Cord* had acted under letters testamentary upon the estate of *Sarah*, legally granted to said *John*. And they may further presume, from the lapse of time aforesaid, and all the other circumstances in this case, that the estate of said *Sarah* was fully administered, and all debts paid. And if the jury find from all the circumstances in the case, that the petitioner, *Rebecca*, openly and

publicly acted for herself as a free person,—making contracts as such for a period of twenty years, or any *considerable* length of time less than twenty years, without the interruption of any one; and also find the aforesaid *John Cord*, having knowledge of her so acting, nor any one else adopted any steps to claim her as a slave: and shall further find that the children of the said *Rebecca*, acted under the direction and control of said *Rebecca* as free persons; and that no attempt was made by *John Cord*, or any one else, to claim them as slaves, then the jury may find that they are abandoned, and allowed to go at large as free persons, without any claim to them as slaves; and if the jury find these facts, these petitioners are entitled to their free·dom.

And the defendant the following prayers:

1. If the jury believe that *Rebecca Garrett*, the petitioner, was the slave of *Sarah Cord*, (whose will has been given in evidence by the petitioners,) and the daughter of *Beck*, named in said will; and if they further find that all the other petitioners are the children of said *Rebecca*, and were born since the death of said *Sarah;* and if they further find that no letters testamentary or of administration had ever been granted, upon the estate of said *Sarah*, then the petitioners are not entitled to their freedom, and their verdict must be for defendant.

2. If they find that defendant always resided in *Anne Arundel* county, and at the time of filing this petition, the petitioners were held in custody in *Anne Arundel* county as slaves, then this petition cannot be sustained in this court.

The court granted the fourth, and rejected the first three prayers of petitioners, and refused to grant the prayers of defendant, and instructed the jury that they are at liberty to infer, from all the circumstances in the case, that letters of administration were granted on the estate of *Mrs. Cord*, and that her estate has been duly administered, and all its debts paid. To which opinions, and each of them, the defendant excepted.

The verdict and judgment being for petitioners, the defendant appealed. The record does not show, that any prayer called the 3rd prayer, was ever offered by the petitioners.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, and MARTIN J.

By WM. H. G. DORSEY, for the appellant, and
By NELSON and PRESSTMAN for the appellees.

DORSEY, C. J., delivered the opinion of this court.

The first question presented for review in this court, by the record before it, is, did *Baltimore* county court err in overruling the plea in abatement to its jurisdiction, filed by the appellant, to the appellees' petition for freedom? The plea alleges that each and every of the petitioners did, at the time of filing said petition, and long before, reside, and have ever since resided, under the direction of the said *Thomas Anderson*, their master and owner, out of the jurisdiction of *Baltimore* county court, and in *Howard* district of *Anne Arundel* county. By the law of *Maryland*, as far as regards liberation from slavery, a negro is regarded as the slave of him by whom he is held in bondage, until his right to freedom is established by the judgment of the court, competent to try such right. By the act of 1796, ch. 67, sec 21, the county court of that county in which the "petitioner or petitioners shall reside, under the direction of his, her, or their master or mistress, or owner," are exclusively vested with the power of trying the petition for freedom. That the petitioners at the time of filing their petition and for some time before, resided under the direction of the appellant their assumed owner, in *Howard* district of *Anne Arundel* county, are facts stated in the plea in abatement, and are not traversed or disproved, but *on the* contrary are fully established by the proof in the cause.

In acquiring a residence by a slave, he has no will of his own. Neither his acts unauthorised by his master, nor his volition form any ingredient in the constitution of his residence. Its creation and continuance depend entirely upon the acts and intentions of the owner, whose power of changing at his own will and pleasure the residence of the slave, is a matter resting entirely in his own discretion. In *Johnson vs. Tompkins*, 1

*Baldwin's Rep.*, 577, (a case involving the rights and powers of slave-owners) *Justice Baldwin* of the Supreme Court of the *United States*, says: "As a consequence of the right of property, the owner may keep posession of his slave; if he absconds he may retake him by pursuit into another State, and may bind or secure him in any other way to prevent his second escape; he may arrest him by the use of as much force as is necessary to effect his reclamation; he may enter peaceably on the property or into the house of another, taking care to commit no breach of the peace against third persons. But it is no breach of the peace to use as much force or coercion towards the fugitive as suffices for his security; as without such force no slave could be retaken without his consent. The master may also use every art, device or stratagem, to decoy the slave into his power; odious as these terms may be in their application to an unlawful act, they ought to be considered as far otherwise when used for a lawful and justifiable purpose." If these powers exist in the master in regard to a fugitive slave, (as they unquestionably do,) they are equally inherent in him, when he seeks to change the residence of his slave, or to obtain a more secure possession of him, or when acting under an apprehension of his design to abscond.

In overruling the appellant's plea, in abatement and awarding a *respondeat ouster*, we think *Baltimore* county court erred, for which error its judgment must be reversed. And there being no jurisdiction in that court according to the express provision of the act of 1795, to entertain the petition before it, no *procedendo* can be awarded.

From the preceding remarks of this court, it is not to be understood as having decided, that in no case can a petition for freedom be sustained in a county court, other than that in which the petitioner resided at the time of filing his petition. A case may well be imagined, where such a right would be sustained. As for example, where it appears that a master, having given residence to his slave in county A. for instance, upon being informed that he is there about to file his petition for freedom, and knowing that the evidence necessary to maintain the peti-

tion can be conveniently obtained only in that county, and having no sufficient reason to believe that a fair and impartial trial cannot there be had, in fraud of the jurisdiction of the court of the county A, and to prevent a fair trial of the claim of the petitioner, removes him to another county; in such a case the county court of A, might exercise its jurisdiction and proceed on a petition for freedom in the same manner as if such change of the residence of the slave had never taken place. But such is not the case now before us appearing either in the petition or proof.

The decision thus expressed upon the first bill of exceptions would, as it might well have done, have terminated the duties of this court in relation to the case now before it. But the legislature of *Maryland* having required our decision on all the bills of exceptions, taken in the case, we now proceed to the discharge of the remaining portion of the duty thus imposed upon us.

The second exception of the appellant is taken to the over-ruling of his suggestion made under the act of 1810, chapter 63, sec. 3, for the removal of the cause to the court of *Howard* district of *Anne Arundel* county. The suggestion being made upon oath, and "supported by competent testimony," it was submitted to the county court, under an agreement of the parties, containing a provision, "that the testimony already on file in this cause may be read in evidence subject to legal exceptions." Under this submission "the testimony already on file" being subject to legal exceptions, was inadmissible. The court below in determining on the sufficiency of the suggestion for the purpose for which it was offered, is confined to the competent testimony offered in its support, and cannot receive any evidence upon the subject offered by the opposite party. To warrant the removal under the suggestion, the act of Assembly requires that the person, "claiming to be the owner of the said petitioner, had *actually* held the said petitioner in bondage." In construing this clause of the act of Assembly, if we can do so, consistently with its general intent, we ought to give some import to every word used in the enactment. "Actually held

in bondage," was intended to mean something more than a mere legal or constructive holding in bondage; it means a holding in bondage in point of fact. The suggestion and affidavits thereto, prove, that as a matter of fact, the appellant had actually held in bondage the petitioner *Rebecca*, but not her children, the other petitioners, within the contemplation of the act of Assembly. Of them he had but a legal, a constructive holding in bondage. Had the appellant in his suggestion prayed for the removal of *Rebecca Garret's* case only, it ought to have been granted by the court below. But having prayed for the removal of the petition of all the petitioners, for the reason we have stated, we think the county court did not err in its general overruling of the appellant's suggestion.

The ruling of the county court excepted to, is thus briefly stated in the appellant's third bill of exceptions. "The defendant having asked of the witness whether the petitioner was not married, and had a husband, to which the witness answered that she had, and his name was *William Garrett*. The counsel of the petitioners then proposed to ask the witness, what was the character of said husband, to which the counsel for defendant objected; but the court overruled the objection, and allowed said question to be asked, which was asked, and the witness answered the question to the jury, and to which opinion of the court the defendant, by his counsel, excepted," &c.

The bill of exceptions does not disclose for what purpose the question objected to was asked, and there is nothing in the record from which this court can infer its pertinence or materiality to the issues before the jury. It ought, therefore, to have been rejected by the county court as an immaterial and impertinent question. But although the county court erred in permitting the question to be asked and answered, yet, as it does not appear to us that it could have had any influence on the jury in their finding on the issues in the cause, it forms no ground for the reversal of the judgment of the court below.

We concur in opinion with the county court, that by the last will and testament of *Sarah Cord*, the petitioner, *Rebecca Garrett*, was not manumitted. The testatrix declares, that

her negroes are, by her will, "liberated and set free, in the manner and form following, that is to say: my negro man *Tom*, my negro man *Joshua*, and my negro woman *Phebe*, to be free, to all intents and purposes, from the date of my decease; my negro woman *Beck*, and my negro man *Basil*, to be free at the expiration of four years from the date of my decease; my negro boy *Levi*, my negro boy *David*, my negro girl *Seny*, my negro girl *Muriah*, my negro girl *Elizabeth*, my negro girl *Matilda*, my negro boy *Elias*, my negro child *William*, all and each of them to be free, when they arrive at the age of twenty-five years, them, and their issue or increase, forever." On reading this will, that the testatrix designed to enumerate all the slaves on whom manumission was conferred, and to prescribe the periods at which the manumission of each was to take effect, we regard as a proposition too manifest on the face of the will to admit of controversy. Some of them were to be free at her death, some four years afterwards, and some with their issue or increase, as they should respectively arrive to the age of twenty-five years. As to the issue of her negro woman *Beck*, who was to be free four years after the testatrix's death, she has made no provision, and, consequently, under her will, they have no claim to freedom. Had she designed it, she would have so declared in her will, and would, as she did in every other instance, have specified the period at which emancipation was to commence. Our province is not to speculate as to intention, and give efficacy to bequests not expressed in the will, but to declare its true intent and meaning, upon a fair interpretation of the terms and expressions which it contains.

The appellant's fourth bill of exceptions raises various questions as to the correctness of the ruling of the county court in granting the fourth prayer of the appellees, and rejecting the two prayers made by the appellant, and in instructing the jury, that they were " at liberty to infer from all the circumstances in the case, that letters of administration were granted on the estate of *Mrs. Cord*, and that her estate had been duly administered and all its debts paid." In granting *the fourth prayer of the petition-*

ers, the county court erred, in the opinion of this court, for various
reasons, any one of which we deem sufficient to have prevented
the prayer being granted in its entirety. The first error deemed
necessary to be mentioned, is presented by the first and second
sentences, (according to its punctuation,) of the petitioners' fourth
prayer, which are in these words: "If the jury find from the evi-
dence in the cause, that *Sarah Cord* made her will, as stated in
the first prayer, and by said will appointed *John Cord* the execu-
tor thereof; and that said *John Cord*, after the death of *Sarah*,
and in or prior to the year 1819, sold personal property left by
said *Sarah*, and acted in reference to said property as executor.
The jury may presume, from lapse of time and all the evidence
in this case, that said *John Cord* acted under letters testamen-
tary upon the estate of *Sarah*, legally granted to said *John*."
The only evidence upon which the jury were authorised to
find this presumption was, the will of *Sarah Cord*, and the
proof of *Beal Stinchcomb*, which, as regards this question, is
as follows: "that *John Cord*, named as executor of *Sarah
Cord*, sold the rest of the negroes," except *Beck*, the petitioner.
But in what character *John Cord* sold the negroes; at what
price they were sold; whether the sales were consummated by
payment of the purchase money; whether the negroes sold
were ever delivered to the purchasers, and if so delivered, for
what length of time they remained in their possession; and
whether *John Cord* paid the debts of the deceased, or otherwise
administered her assets, are facts for the ascertainment of which
the proof in the cause furnishes no solution. There is no evi-
dence that any inventory was ever returned to the orphans
court of *Anne Arundel* county, or any account of the executor
settled before it, or that it ever passed any order; or that any
proceeding was ever had before it recognising *John Cord* as
the executor of the deceased. The exhibit of the will and the
isolated fact, that "*John Cord*, named as executor of *Sarah
Cord*, sold the rest of the negroes," is not evidence legally
sufficient to warrant the jury in finding that "*John Cord* acted
under letters testamentary upon the estate of *Sarah*, legally
granted." And such a presumption is strongly repelled by

the provision in the will of the testatrix, "that no letters of administration be taken out on her estate." Under all the circumstances of the case, the only rational conclusion at which the jury could, with any certainty, arrive, was that no letters testamentary had been granted.

It hence results, that the court erred in granting the third sentence of the prayer: "That the jury may further presume from lapse of time aforesaid, and all the other circumstances in this case, that the estate of said *Sarah* was fully administered and all debts paid." There having been no letters testamentary granted, no such presumption can legally arise.

The fourth sentence of the fourth prayer is as follows: "And if the jury find from all the circumstances in this case, that the petitioner *Rebecca*, openly and publicly acted for herself, as a free person; making contracts as such, for a period of twenty years, or any considerable length of time less than twenty years without the interruption of any one; and also find the aforesaid *John Cord* having knowledge of her so acting, nor any one else adopted any steps to claim her as a slave; and shall further find that the children of the said *Rebecca*, acted under the direction and control of said *Rebecca* as free persons; that no attempt was made by *John Cord* or any one else to claim them as slaves; then the jury may find that they are abandoned and allowed to go at large as free persons, without any claim to them as slaves: and if the jury find these facts, these petitioners are entitled to their freedom." In granting this last sentence of the fourth prayer, we conceive there is error, upon several distinct and and independent grounds. The facts stated in the affidavit for the removal of this case from *Baltimore* county court to the court of *Howard* district of *Anne Arundel* county, are not in evidence, and for our consideration upon the questions before us, under the appellant's fourth bill of exceptions. There was proof before the jury that the petitioner *Rebecca Garrett*, was part of the personal estate of *Sarah Cord* at the time of her decease; and there is no evidence to show she was then the property of any other person. There was no evidence to show that *John Cord* ever entered

into any contract by which *Rebecca Garrett* was to be free, or was intended so to be; or that by word or deed (other than her going at large as a free person, as the prayer puts it to the jury to find, with his knowledge,) recognized her to be such. There is a total absence of all such facts as taken in connection with the actual enjoyment of the right claimed, have in somewhat analogous cases been deemed sufficient to authorise a jury in finding, or presuming, the existence of a deed, conferring the right, where the time of its actual enjoyment has been for a less period than twenty years. This court have said in *Burke vs. Negro Joe*, 6 *Gill and John.*, 136, that "negro's going at large and acting as free for any length of time, will not *per se*, be a sufficient foundation to presume a deed. Because he might be in that situation without the knowledge of his owner, or there might be no person legally authorised to claim him," or, it might have been added, that the owner might have been unsuccessful in his reasonable efforts to assert his rights, or that the place or circumstances under which the slave acted as a free man, excused him from making the usual efforts to reduce him to bondage. We regard it as a principle equally clear with that referred to in 6 *Gill and John.*, that no 'presumption of a deed of manumission is authorised as a matter of law to be declared by the court; or as a matter of fact to be found by the jury, upon the mere ground that a slave has gone at large and acted as a free man with his master's knowledge, unless such going at large and acting as if free, be for at least twenty years uninterrupted duration. The county court, therefore, erred in declaring that the petitioners were entitled to their freedom had they thus gone at large as free for any time less than twenty years. It erred also in saying that freedom was so consummated by "any *considerable* length of time less than twenty years." The word, "considerable," when thus used, being a term of too indefinite import to be left to the finding of a jury, and tending to confuse or mislead them. One juror might deem six months, another six years, another ten years, another sixteen years, as the considerable length of time within the meaning of the county court; and thus the obvious tendency

of granting the prayer, would be to distract and mislead the jury. The giving the prayer was also wrong, because it submitted to the finding of the jury a knowledge in *John Cord,* without a particle of testimony having been offered to show it.

The conclusion of the prayer, (which asserts the freedom of the children of *Rebecca,* because they acted as free persons under her direction and control, without any attempt by *John Cord* or any one else to claim them as slaves; and that the jury might thence find that they were abandoned,) is also erroneous. It warrants the jury in saying that the negroes are abandoned and free, although *John Cord,* had no knowledge of their ever having acted as free persons. What import the author of the prayer designed to give to the word "abandoned," does not perhaps very distinctly appear. But if it meant to assert that abandonment by the owner of a slave that he might be free, is, *per se,* a legitimate mode of manumission in *Maryland,* it is a proposition as novel as it is contradictory to the express provisions of our act of Assembly upon the subject. A man may to day abandon his slave as free, and to morrow take possession of him, and his title to him is as unquestionable as if no such abandonment had ever been made. In *Maryland* the law recognizes but two modes of manumission; the one by last will and testament, the other by deed, duly executed, acknowledged and recorded. It is true, such deeds of manumissions, are sometimes presumed to exist without their production, but abandonment, *per se,* is no sufficient foundation for such a presumption.

This prayer, however, is radically wrong, upon another ground than those which have been stated. An executor has no power, as such, in this State, to execute a deed of manumission; it would be a palpable violation of his duty; a fraud upon the creditors or representatives of the testator, which the law would not tolerate. No presumption either of law or fact, that such a deed was executed by the executor can ever arise, or give to petitioners a title to freedom.

From the preceding part of this opinion, it is apparent, that the appellant by his first prayer having asked less, and but a part of what he had a right to demand at the hands of the

county court, there is error in its not being granted. That this court dissent from the instruction given by the county court, is shown by its decision on the third sentence of the fourth prayer of the petitioners. The appellant having, for the same reasons assigned in his second prayer, why the petition should not be sustained, pleaded to the jurisdiction of the county court, and that plea being overruled by the court, and a bill of exceptions taken by the appellant to its ruling, it was not bound to entertain a prayer, the only effect of which would have been the reiteration of a decision already pronounced by the court, and from which a bill of exceptions had been taken. By such reiteration no additional injury would have been inflicted on the appellant, and the court's refusal to make it by rejecting the prayer, forms no ground for the reversal of its judgment. If the court can be required again and again to reiterate its decision upon the same point, there would be no end to litigation, and a trial might be procrastinated almost indefinitely.

We concur with the county court in overruling the appellant's suggestion for a removal of the cause, as stated in his second bill of exceptions, and also in refusing to sustain his second prayer as stated in his fourth bill of exceptions, but dissenting from its rulings in the first and residue of the fourth bill of exceptions, and its instruction given to the jury as stated in the fourth bill of exceptions, its judgment is reversed and no procedendo will be awarded.

JUDGMENT REVERSED.