# Negro Henry Rozier *vs.* Rich'd T. Holliday.

Since the act of 1831, ch. 281, a negro of *any age* is capable of receiving freedom by will according to the purposes and provisions of that act.

Manumitted negroes may be sold for a term of years for payment of debts, where such sales will realise the sum required.

But when so sold they ultimately take their freedom *under the will alone,* and it is not necessary that the executor or administrator should execute deeds of manumission according to the terms for which they may be sold.

An executor has no power to execute deeds of manumission, unless such deeds are authorised by the will.

Where a manumitted negro is sold for a term of years to pay debts, he is under the protection afforded by the act of 1817, ch. 112, sec. 3, and if the *purchaser* sells him without executing a deed, as required by that act, he is entitled to freedom, provided the jury find fraud was intended in making the sale as provided by that act.

Appeal from the Circuit Court for Washington county.

*Petition for freedom,* by the appellant, against the appellee. The case was tried upon the issue of *freedom vel non.*

In the course of the trial two exceptions were taken by the petitioner to the rulings of the court, (PERRY, J.,) both of which are fully stated in the opinion of this court. Under the rulings the verdict and judgment were against the petitioner, and he appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Richard H. Alvey* for the appellant, argued:

1st. That under the will of Brashears, the petitioner was entitled to his freedom as against the distributees of the testator, having been born of one of the female slaves manumitted by the will in the interval between the making of the will and the death of Mrs. Brashears, during whose life the negroes were to serve, and upon whose death they were to take their freedom. That the testator, under the act of 1809, ch. 171, had the right and power to fix and determine in his will the state and condition of the petitioner, as the issue born of a female slave during a period of service, upon the expiration of which she would be entitled to freedom; and that the petitioner is entitled to maintain the state and condition declared and fixed for him by the testator's will, irrespective of age or incapacity to work. And the only persons against whom the petitioner could not claim are the creditors of the testator, in the contingency that the personal estate, without the petitioner, was insufficient to pay debts. And in this case it does not appear that an emergency existed for the sale of the petitioner for the payment of debts; and the order that was passed by the orphans court several years after the death of the testator, and after the death of Mrs. Brashears, and when a presumption should have been entertained that the debts of the estate had been paid, does not show or intimate that the payment of debts was the object in selling the petitioner. And the order of the orphans court is expressed in such vague and indefinite terms, in the absence of proof of a necessity for the sale of the petitioner to satisfy creditors of the estate, it should be treated as a nullity and as insufficient to confer upon the administrator

any authority to sell the appellant or the other slaves; and upon regarding the order of the orphans court as a nullity, the petitioner would take his freedom under the will, by the true construction of the act of 1809, ch. 171. 7 *Md. Rep.*, 453, *Tongue vs. Negro Crissy.* 8 *G. & J.*, 165, *Wilson vs. Barnett.*

2nd. But even if the order of the orphans court was sufficient to confer competent authority upon the administrator to sell the petitioner for a term of years, yet as there was no bill of sale made according to the requirements of the act of 1817, ch. 112, sec. 3, the sale was void, or at any rate voidable; and by the terms of the act the party is entitled to his freedom, by reason of the omission to make and put on record a bill of sale for his protection. And the appellant being entitled to his freedom as against Fitzhugh, from the making of the original sale by the administrator, because of the *laches* and negligent wrong of the parties to such contract, the defendant, who claims under Fitzhugh, and by virtue of the original contract of sale, cannot stand in a better or more favorable condition with reference to such sale than Fitzhugh himself; nor will the defendant be permitted to take any benefit or advantage of the wrong and neglect of the party under whom he claims.

3rd. And if it should be thought that the petitioner takes no right under the will of Brashears, the orphans court had full power to order and direct the sale of the negroes according to the discretion of the administrator; and the administrator in this case having sold the appellant to Fitzhugh for a term of years, and Fitzhugh holding the appellant for such term and under the contract with the administrator, he could only sell and dispose of the petitioner for the unexpired period of service by complying with the requirements of the act of 1817, ch. 112, sec. 3; and for the non-compliance with such requisites of the law in selling the petitioner, he became entitled to his freedom. The question of fraud being left to the jury, as was proposed in this case by the appellant's prayer, which was rejected by the court.

Negro Henry Rozier *vs.* Holliday.

*Daniel Weisel* for the appellee, abandoned the first exception, under the decision in 7 *Md. Rep.*, 454, *Tongue vs. Negroes Crissy, et al.*, but upon the second exception argued: that still if the estate of Brashears was not sufficient to pay debts, as it was not, (and it was in this aspect that the orphans court passed the order for the sale of the slaves,) his slaves could not obtain their freedom, at least until all the creditors were satisfied. And if the adm'r *c. t. a.* of Brashears, acting under the order of the orphans court, sold the petitioner for *a term of years* to pay debts, it was incumbent upon him to execute to the petitioner *a deed of manumission, giving his freedom after a particular time, witnessed, acknowledged and recorded, according to the act of Assembly in such case provided.* See *Act of* 1796, *ch.* 67, *sec.* 29. This not having been done, or there being no proof of it in the cause, no bill of sale, as required by the act of 1817, ch. 112, sec. 3, from Fitzhugh to Holliday was necessary. The petitioner must first have been legally entitled to his freedom, before he could appeal to the law of 1817 for his protection, or to give him his freedom before the proper time, by reason of any omission to observe its requirements. In this aspect of the case the refusal of the court to instruct upon the prayer of the petitioner was correct; and would be correct notwithstanding the law of 1831, provided there were debts which required the sale of the petitioner, and no valid deed of manumission were made by the administrator for him when sold under the order of the orphans court:—for in such case he could not assert his freedom simply under the will, for the will made him free on the *death of his mistress;* whereas the law, there being debts and no sufficiency of other personal assets to defray them, held the petitioner *beyond that time, and even for life.* Therefore the necessity, also, of a deed of manumission. In case of a reversal, this issue will be more distinctly made (the necessity of resorting to the slaves to pay debts) on the trial under the *procedendo.*

Tuck, J., delivered the opinion of this court.

The appellant claims his freedom under the will of Van S.

Brashears, which was executed on the 20th day of October 1832, and provided that all his property, real, personal and mixed, should belong to his wife, Maria, for her sole and exclusive use and benefit, but that at her death all his slaves then existing, and those that might be born of them thereafter, should then cease to be slaves, and ever thereafter remain free. The will was admitted to probate on the 31st day of October 1832. It was proved on the trial that the petitioner was born after the death of the testator, and was the son of Henry and Mary Rozier, slaves of the testator at his death; and that the widow of the testator died in the month of October or November 1837, when petitioner was about four or five years old; and that a negro boy is not able to work and gain a sufficient maintenance and support until he is ten or twelve years of age.

On the 9th January 1838, and after the death of the widow, the orphans court passed an order, that the administrator of Van S. Brashears "proceed to make such disposition of the negroes belonging to the estate as will enable him to close the estate of deceased with the court." The administrator sold the petitioner, then in his fifth year of age, to Benjamin G. Fitzhugh, to serve from the 1st of March 1838 until the 1st of March 1860, who afterwards sold him to the appellee in this case for the residue of the term.

The defendant below, by his counsel, offered a prayer, the point of which was, that if the jury believed from the evidence that the petitioner was not more than four or five years of age at the time of Mrs. Brashear's death, when his freedom was to commence under the will, and that he was not then able to work and gain a sufficient livelihood and maintenance, then the petitioner was not entitled to his freedom under the laws of Maryland, and the verdict must be for the defendant, which prayer the court granted.

The petitioner also prayed for an instruction upon the whole evidence, the point of which was, that if the jury should believe there was no bill of sale from Fitzhugh to Holliday, duly executed and acknowledged, specifying and designating the true time or condition of the servitude of the petitioner and the residence of the purchaser, then the petitioner was entitled

49    v.8

to his freedom, the jury having the right to decide whether there was any fraud intended in the sale of the petitioner, and if no fraud intended, then the omission to make the bill of sale would not entitle the petitioner to his freedom. This prayer the court rejected, and the petitioner appealed.

This case was tried in March 1855. Since then we have decided that under the act of 1831, ch. 281, a negro of whatever age is capable of receiving freedom, by will, according to the purposes and provisions of that act. It follows, therefore, as conceded by the appellee's counsel, that the ruling of the court below on the first exception must be reversed. *Tongue vs. Negro Crissy, et al.,* 7 *Md. Rep.,* 453.

The second exception involves the application of the act of 1817, ch. 112, sec. 3, to cases where negroes entitled to freedom under a will are sold, for purposes of the estate, for terms of years. That they may be sold for the payment of debts and for terms of years, where such sales will realize the sum required, see *Allein vs. Sharp,* 7 *G. & J.,* 96. But do they ultimately take their freedom under the will, or is it necessary, as contended by the appellee, for the executor or administrator to execute deeds of manumission according to the terms for which they may be sold? Doubtless by force of the will alone. The general principle is, that an executor has no power to execute deeds of manumission. *Anderson vs. Garrett,* 9 *Gill,* 120. The case is different, however, where such deeds are authorised by the will. *Pearce vs. Van Lear,* 5 *Md. Rep.,* 85. If, in cases like the present, a deed was necessary to confer freedom, the failure or neglect of the administrator or executor to perform this duty might deny to the negro all benefit of the bequest, by the want of competent proof. The law does not subject persons in this predicament to any such risk. The right is derived under the will, limited in its enjoyment by the term of service that may be imposed in the due administration of the estate; and when the time expires, as may be shown by the account of sales or otherwise, the party can claim the usual certificate of freedom from the register of wills. Hence it follows that at the time the appellee purchased the appellant from Fitzhugh, he was in a condition which

secured to him the protection afforded by the act of 1817, "as a servant or slave entitled to freedom after a term of years, or particular time," subject, of course, to the finding of the jury on the question of fraud in making the sale, as provided by the act. Consequently the exception on this point was well taken.

We express no opinion on the effect of the order of the orphans court, passed 9th January 1838, nor as to the *onus* of proof touching the condition of the estate, as these questions are not presented by this record. On these points see *Allein vs. Sharp*, 7 *G. & J.*, 96; *Wilson vs. Barnett*, 8 *G. & J.*, 159, and 9 *G & J.*, 158.

*Judgment reversed and procedendo ordered.*