ROBERT W. HUNTER vs. HENRY D. HATTON AND GEORGE KENDRICK.—*December* 1846.

Irregularities and errors which occur in the progress of an equity suit, which could only be taken advantage of by the party aggrieved by them, on a rehearing, a bill of review, or on appeal in the cause in which they are found, detract nothing from the validity of the decree, when the record of such cause is presented as evidence collaterally.

Such is the nature of the irregularity in appointing commissioners, to determine whether an infant's land ought to be sold for her advantage, before her petition for sale was filed with the clerk; of the exercise of the authority by the commissioners, without the issuing of a commission to them; that the commissioners were not freeholders, or the substitution of one purchaser for another at the time of final ratification of the sale.

Where a petition showed an appropriate case for the jurisdiction of the county court, no errors or irregularities in the proceedings under it, can oust the court of the jurisdiction thus acquired, or impair, as to those who are parties and privies, the validity of its decree, when collaterally drawn in question.

Where a petition was filed by an alleged guardian and *prochein ami* of an infant, for a sale of her land, on the ground that it would be for her interest and advantage, to which she was not summoned nor made a party, the objection that the record of such a cause is not evidence against her, is not one to the jurisdiction of the court, but rests on the broad principle, that decrees and judgments are only binding on parties to the proceedings on which they are founded, and those claiming under them.

The act of 1818, chap. 133, does not repeal that part of the act of 1816, chap. 154, which requires infants to be made parties to proceedings in respect to sales of their real estates, when deemed beneficial to their interests.

The act of 1818, is only in conflict with that of 1816, in relation to the evidence to be adduced to the court to satisfy it, that the sales which it is called on to decree, would be for the interest and advantage of the infant.

The act of 1816, left the court to its ordinary mode of obtaining information as to matters of fact; but the 2nd sec. of the act of 1818, provided for the issuing of a commission to not less than three discreet and sensible men, freeholders of the county wherein the lands should lie, the sale of which is applied for.

As well now, as before the act of 1818, the infant, if a resident of the State, must be summoned to answer the petition filed by his guardian or *prochein ami*, and must appear by guardian to be appointed by the court, before the commission under the act of 1818 can rightfully issue.

The guardian of the infant, thus appearing, has a right to be heard and represented in the naming of the commissioners; in the examination of the evidence to be adduced before them, and in the action of the court upon the return of the commissioners.

Proceedings in equity, filed by a guardian and *prochein ami* of an infant, to sell her lands, to which she was not summoned nor made a party, are not admissible evidence against her, or those claiming under her.

But where, after a decree for a sale, and a sale in fact, the infant, whose lands were affected, united with her husband in a petition in the cause, and made themselves parties thereto, and ratified what had been done, and called upon the court to enforce the sale, or resell the property. After ratification of the sale, and payment of the purchase money to the trustee, and conveyance of the land by the trustee to the purchaser, the husband of the infant will not be permitted to insist, that the proceedings are null and void, because of the non-summons of his wife.

In an action of trespass, *q. c. f.*, the defendants severed in their pleadings; one of them pleaded *non cul*, and *liberum tenementum*. The last plea was denied generally. The plaintiff claimed title under a decree, and as a purchaser from the trustee. The sale was made prior to 1841; ratified in July 1844; and a deed executed by trustee in September 1844. The trespass was committed and the action commenced in February 1844. HELD, that the plaintiff's traverse of the plea, admits the defendant's right to *possession*, should the jury find him entitled to the *freehold;* and that although the record of the decree, apart from the deed from trustee, is not, under the pleadings, admissible evidence of the *possessory right* thereunder, acquired by the plaintiff, yet when offered with such deed, is competent testimony to go to the jury, to show that the freehold is in the plaintiff.

The trustee's deed does not operate to pass the freehold merely from the time of its execution, but being a conveyance under a judicial sale, upon the principle of relation it operates retrospectively, and vests the freehold in the grantee from the date of the sale. It disproves the plea of *liberum tenementum*, by shewing, that by operation of law, at the time the trespass was committed, the freehold was in the plaintiff.

*Liberum tenementum*, is a plea interposed by a defendant for the purpose of trying his right to the freehold; it is not an absolute denial of all colorable right to possession by the defendant.

In an action of *t. q. c. f.*, under the general issue of not guilty, the plaintiff is not bound to rely upon the mere fact of his possession, but may also prove the legality thereof, and his title to the premises, and so entitle himself to greater damages, than a mere possessor of the land trespassed upon.

Where, under the issue joined, the only question was, whether the plaintiff had a freehold estate, parol evidence that the defendant had received from the plaintiff a balance of purchase money, for the land in controversy, and that thereupon the plaintiff had taken possession, with the consent of the defendant, who said he renounced all his claim to the land, has no tendency to prove or disprove the fact at issue.

APPEAL from *Prince George's* county court.

This was an action of *trespass q. c. f.*, brought on the 16th February 1844, by the appellant against the appellee, for a

forcible entry into, and expulsion from a tract of land called *Boarmans Content*.

The defendant, *H. D. H.*, pleaded, 1st., *non cul.*

2nd. That the *locus in quo*, &c., is, and at the time was, the proper soil and freehold of the said *H. D. H.*, wherefore he entered, as it was lawful for him to do.

The defendant, *G. K.*, pleaded *non cul.*

The plaintiff joined issue on the general issue; and as to second plea of *H. D. H.*, replied, that the matters and facts therein alleged, are not true, &c.

1ST EXCEPTION. At the trial of this cause the plaintiff to maintain the issues on his part, proved that some short time before the institution of the present suit, the plaintiff was in the possession of the land and premises in the declaration mentioned, called *Boarmans Content*, claiming title to the same ; and that he was engaged in the repairs of the dwelling situated on said land, on the 3rd February 1844. That during the night of that day, the said dwelling house was forcibly entered, and broken open by some person or persons, and that on the next morning, when the witnesses went to the said house, they found the defendants in the possession of the said house. That the defendants told the witnesses that they had taken possession of the said house and premises, and that they meant to keep possession. The defendants had with them, at that time, guns, and threatened to shoot the servants of the plaintiff if they came upon or crossed the said land. The said witnesses also proved, that the said defendants kept possession of the said house and premises for eight or ten days, refusing to suffer or permit the plaintiff or his servants to enter thereon.

The defendants then, for the purpose of maintaining the issues on their part joined, proved to the jury, that the said land and premises was formerly the property of *Gustavus Brown*, the deceased, father of *Mary E. Brown*, the present wife of the defendant, *Hatton ;* that *Gustavus Brown* died intestate in 1830, seized of the said land, leaving *Mary E. Brown*, now the wife of the defendant *Hatton*, his only child

and heir at law, who intermarried with the said defendant, *Hatton*, in the year 1838.

The plaintiff then, further to maintain the issues on his part joined, offered to prove, that after the death of the said *Gustavus Brown*, the said land was sold by a decree of *Prince George's* county court, sitting as a court of equity, as the estate and for the benefit of the said *Mary E. Brown;* and offered to prove that the same was, at that sale, purchased by one *Joseph Hatton*, who subsequently sold it to the plaintiff, and for that purpose offered to read to the jury, the following record of a decree in *Prince George's* county court, and all the proceedings therein.

That record showed, that on the 12th December 1837, *Gustavus Brown*, guardian and next friend of *Mary E. Brown*, an infant, filed a petition before the judges of *Prince George's* county court, as a court of equity, alleging, that *M. E. B.*, as the heir of *G. R. Brown* and *Mary Brown*, is entitled in fee to a tract of land called *Boarmans Content*, lying in said county ; that the land has upon it a dwelling house and other out houses, which are going to ruin; that there is no timber thereon to repair or enclose it ; that the whole is now waste and ruining ; and that from the facts alleged, as well as the fact that the said infant is otherwise without adequate means of support, it would be for the advantage and interest of said infant that the same be sold.   Prayer, for a commission to three discreet, disinterested persons, to ascertain whether or not it is for the advantage of said infant that the land should be sold ; and to ascertain and report its value ; and that the court would decree a sale, and take such order in the premises as may be equitable and right.

On the 21st November 1837, *Key, A, J.,* had ordered, that he commission issue, as prayed, to the commissioners recommended.

On the 10th February 1838, the commissioners, upon a certified copy of the petition and order aforesaid, to which they had appended an affidavit dated 24th January 1838, that they would execute the trust reposed in them by said commission, without favor, affection, or partiality, &c., returned,

that on the 25th January 1838, they had entered on the land as named in the said commission, and after duly examining the same, in their opinion believe it to be worth about $500, and from its situation and the ruinous condition in which it is, believed it would be for the advantage of *M. E. B.*, for the same to be sold.

On the 5th April 1838, the county court, (STEPHEN, C. J., and KEY, A. J.,) decreed, that the land and real estate be sold at public sale, upon a credit of two years, and *Gustavus Brown* to be trustee, and to give bond, &c.

On the 4th June 1838, the trustee gave a bond which was approved.

On the 14th October 1841, *H. D. Hatton* and *Mary E.*, *his wife*, filed their petition, alleging, that a sale of the said land is pretended to have been made by the trustee to *Joseph Hatton*, for $560; that such sale was not reported to the court, nor ratified. No part of the purchase money has been paid, and the trustee has departed this life; that there is no means of enforcing payment, except by a resale of the land, as the said *Joseph* is insolvent. Prayer, for a new trustee, and a resale, unless the purchaser, *Joseph*, shall pay the purchase money.

On the 23rd October 1841, *Joseph Hatton* answered said petition; insisted upon the sale to him, that he was let into possession; that he gave bond with security, for the purchase money, and afterwards sold it to *Peter D. Hatton*, who has been in possession of said lands ever since; that he, defendant, is able to pay the purchase money, and had settled with the said trustee. Prayer, for the appointment of a trustee to complete the trust and carry the decree into effect, and convey the land to *Peter D. H.*, who is willing to pay, as soon as he can get a title.

The petitioners filed a general replication to this answer, and a commission issued to take proof.

On the 19th January 1842, the county court, after proof returned, (C. DORSEY, A. J.,) dismissed the petition of the 12th December 1837.

On the 8th July 1844, *Robert W. Hunter* filed his petition, alleging the sale to *Joseph Hatton,* and his compliance with the terms of sale; that the sale had not been finally ratified; that he was a purchaser of the land from *Joseph;* and with the consent of *Joseph,* had paid the whole of the purchase money to the complainants in this cause.   Prayer, that *R. W. H.* may be substituted as purchaser for *J.;* ratification of sale; and a new trustee appointed to convey.

Upon the foregoing petition, on the 9th July 1844, the county court, (C. DORSEY, A. J.,) ordered and adjudged, (it appearing that this court have heretofore adjudged, that there was a sale of the premises to the said *Joseph Hatton,*) that the sale so made by the former trustee be absolutely ratified, and the said *J. H.* having sold the same to the aforesaid petitioner, it is further ordered, &c., that *Thomas F. Bowie* be appointed trustee to complete the trust, and upon satisfactory proof to him, that the said purchase money is paid, shall execute to the petitioner a conveyance of said land in fee.

The plaintiff also offered in evidence the deed of *Thomas F. Bowie,* as trustee under the decrees aforesaid, to *R. W. Hunter,* for the land decreed to be sold, bearing date 9th September 1844, duly acknowledged and recorded.

But the defendants objected to the admissibility of the said record and deed, on the ground, that no summons had ever issued against the said infant, *Mary E. Brown;* and because it did not appear by the said record, that a commission had issued to three freeholders, as required by the act of assembly; and contended before the court, that the said decree and all the proceedings thereunder, were void.

The plaintiff insisting, that said decree could not be impeached in a collateral manner; but the court (A. C. MAGRU-DER, C. J.,) sustained the objections, and were of opinion, that the said decree was void; and that the sale made thereunder, conferred no title to the said lands upon the purchaser thereof; and refused to permit said record and deed to be read in evidence.   The plaintiff excepted.

2ND EXCEPTION.   After the evidence contained in the preceding bill of exceptions, which was objected to by the

defendant, had been rejected by the court, the plaintiff further to maintain the issues on his part joined, called a witness, and offered to prove by him that the defendant, *Henry D. Hatton,* received from the plaintiff the balance of the purchase money for the land in the declaration mentioned, sometime in the year 1843 ; after the said *Mary E.,* the wife of the said defendant, had attained to her full age of twenty-one years; and that, thereupon the said plaintiff took possession of and entered upon the said lands, with the knowledge and consent of the said defendant, *Hatton,* and who said he renounced all his claim to said land ; but the court refused, upon the objection of the defendants, to permit the said evidence to go to the jury. To which opinion of the court, and to their refusal to suffer said evidence to go to the jury, the plaintiff excepted.

The verdict and judgment being against the plaintiff, he brought the present appeal.

The cause was argued before Archer, C. J., Dorsey, Spence, and Martin, J.

By T. F. Bowie and McMahon for the appellants, and By Tuck and Causin for the appellees.

Dorsey, J., delivered the opinion of this court.

The defendants in this case severed in pleading; *Kendrick* relying on the general issue plea of not guilty, only; and *Henry D. Hatton,* in addition to the general issue, having pleaded *liberum tenementum.* Issues were joined upon the pleas of not guilty; and to the plea of *liberum tenementum,* the replication contained nothing more than a general traverse of the facts contained in the plea.

On the trial, the plaintiff having proved his actual possession of the close on which the trespass is alleged to have been committed; and the defendant, *Hatton,* having proved a freehold interest therein, *jure uxoris,* the plaintiff offered in evidence a record of certain proceedings on the equity side of *Prince George's* county court, instituted in 1837, (whilst she was sole and an infant,) for the sale of her real estate, descended to her from her father, it being the freehold in controversy in this

case; and also the deed of conveyance thereof, of the trustee to the appellant.

The admissibility of this evidence being objected to, a great variety of grounds have been relied on by the appellees in support of the objection. If the testimony were admissible for none of the purposes for which it was offered, by reason of any of the causes assigned in the court below for its rejection, or which can be urged here, then must the decision of the county court in the first bill of exceptions be sustained.

The irregularities and errors in the record produced, pervade every part of it, and are almost without number; but, with one exception, they are of such a character as to detract nothing from the validity of the decrees in the cause, when thus, collaterally, by way of evidence, presented to the court. They are irregularities and errors which could only be taken advantage of by the party aggrieved by them, on a rehearing, a bill of review, or an appeal in the cause in which they are to be found. Such is the nature of the alleged errors, in appointing commissioners before the petition, of the next friend of the infant, was filed with the clerk; of the exercise of their authority by the commissioners, without the issuing of a commission to them for that purpose; that the commissioners were not freeholders; and the substitution of the appellant, as the purchaser of the land sold, if it be an error.

The petition filed having shewn an appropriate case for the jurisdiction of the county court, no errors or irregularities in the proceedings under it, can oust the court of its jurisdiction thus acquired; or impair, as to those who are parties and privies, the validity of its decrees, when, as in the case before us, collaterally drawn in question.

The objection to the evidence offered, on the ground that the infant was not summoned, and made a party to the proceedings before the court, for the sale of her land, is not an objection to the jurisdiction of the court over the subject matter of the petition, but rests upon the broad principle, both of law and equity, that, unless in cases where it is otherwise provided by legislative enactment, decrees and judgments of courts of law and equity, are only binding on the parties to the proceed-

ings on which they are founded, and those claiming under them. As against all other persons, they are *res inter alios actæ*, not binding upon, nor admissible in evidence against them, as adjudications of their rights.

In cases like that now under consideration, it is insisted, on the part of the appellant, that the legislature have, by the act of 1818, chap. 133, repealed the act of 1816, chap. 154, in respect to sales of infants' real estates, when deemed beneficial to their interests, and provided an entirely new and independent course of proceeding, in which the making of infants parties to such proceedings is wholly dispensed with. To such a constructive repeal of the express and salutary provisions of the act of 1816, requiring infants to be made parties to proceedings for the sale of their real estates, there is nothing in the language or objects of the act of 1818, that gives the slightest countenance. There is no repealing clause in it, and nothing in its provisions conflicting in the slightest degree with those of the former act, except it be in the mode by which evidence is to be adduced to the court, to satisfy it, that the sales which it is called on to decree, would be to the interest and advantage of the infants. To that extent, and no further, is it inconsistent with the act of 1816, and to the extent of such inconsistency only, can it be regarded as a repeal of any of the provisions thereof.

By the act of 1816, chap. 154, the mode of proceeding to obtain a decree for the sale of the real estates of infants, when for their interest and advantage, is fully and distinctly prescribed, except as to the manner in which it is to be made appear to the court, that the sale would be "for the interest and advantage" of the infants. In that respect the court was, consequently, left to its ordinary mode of obtaining information as to matters of fact. To change in some degree the mode of obtaining such information, and with a view to give greater protection to the rights of infants, the second section of the act of 1818, provided for the issuing of a commission to not less than three discreet and sensible men, freeholders of the county wherein the lands should lie, the sale of which is applied for. The duties of those commissioners are distinctly defined by the

2nd and 3rd sections of the act of 1818. To this extent is the act of 1818, a repeal of the act of 1816, and no further. As well now as before the act of 1818, the infant, if a resident of the State, must be summoned to answer the petition filed by his guardian, or *prochein ami*, and must appear by guardian to be appointed by the court, before the commission under the act of 1818 can rightfully issue. The guardian of the infant thus appearing, has a right to be heard and represented in the naming of the commissioners; in their examination of the evidence to be adduced before them; and in the action of the court upon the return of the commissioners. To deprive them of these privileges, would be entirely inconsistent with the whole policy of our legislation, which has ever evinced an anxious desire to throw around the rights of infants, to their real estates, every necessary and salutary safeguard.

If therefore the proceedings offered in evidence, had continued to preserve the same *ex parte* character, after the first decree of the court that they bore before it, their inadmissibility as evidence against *Mary E. Hatton*, or those claiming under her, could not be doubted. But the appellants, after the first decree, having, by their petition, made themselves parties in the cause, and instead of seeking, by means of a bill of review, a reversal of the decree, and a correction of the errors in the proceedings, which had taken place, recognized, ratified and confirmed what had been done, and called upon the court to require the purchaser of the land sold under the decree, within a day to be named by the court, to bring the purchase money into court, or that a resale of the property might be made. After such a proceeding, and after a ratification of the sale, and payment to him of the whole purchase money, and a conveyance of the land by the trustee to the purchaser, does it lie in the mouth of *Henry D. Hatton* to say, that the whole proceedings are null and void, because, at their incipiency, *Mary E. Hatton* was not summoned and made to appear, as directed by the act of 1816? By his petition to the court and receipt of the purchase money, he waived all objection, to the irregularity of which he now complains, and should be estopped from asserting it, either at law or in equity.

But it is alleged, that the conveyance, by the trustee to the purchaser, being several months posterior to the trespass for which the present action was brought, that although it were conceded that the appellant was rightfully possessed of the land, and entitled to hold such possession adversely to the appellee, *Hatton*, the owner of the freehold, yet, that in the present state of the pleadings, such right of possession in the appellant, formed no part of the issue on the plea of *liberum tenementum:* and, therefore, upon the issue joined thereon, no evidence could be admitted to prove such mere right of possession in the appellant; that if intended as an answer to the plea of *liberum tenementum*, it should have been specially pleaded by way of replication. And when regarding the title of the appellant as a mere right of possession, the objection to the admissibility of the record offered in evidence should have been sustained. *Liberum tenementum* is a plea interposed by a defendant, for the purpose of trying his right to the freehold; it is not an absolute denial of all colorable right to possession by the defendant.

The opinion of *Lord Denman, C. J.,* in *Doe vs. Wright,* 37 *Eng. C. L. R.*, 231, does not, as has been asserted, clearly shew, that upon the issue joined in this case on the plea of *liberum tenementum,* the superior possessory right of the appellant can be given in evidence. His lordship says, "it is neces-sary to settle what is the true meaning of *liberum tenementum:* what it admits, and what it denies. Now it is pleaded in answer to a possessory action, it must admit a possession in the plaintiff, or it would be bad, as amounting to the general issue. It must admit such a possession as would suffice to maintain the action if unanswered, or as against a wrong doer. On the other hand, it must deny a rightful possession, or it would fail as a defence to the action. In the language of pleading, it gives implied colour to the plaintiff, but asserts a freehold in the defendant, with a right to immediate possession. In an ordinary case, therefore, such a plea is answered, by replying a term of years in the plaintiff created by the defendant: which shews that the plaintiff's possession is not merely colorable but rightful." Such a replication admits the freehold in the

defendant, and only asserts a right of possession in the plaintiff. On an issue upon such a replication, the question to be tried by the jury would be the plaintiff's right of possession. But what is the matter to be tried under the issue in this case, on the plea of *liberum tenementum?* Whether the freehold be in the defendant? The jury, upon finding that fact, have nothing to do with the right of possession. The plaintiff's traverse of the plea, admits the defendant's right to the possession, should the jury find him entitled to the freehold. These views, it is believed, are sustained by *Thompson vs. Hardinge,* 50 *Eng. C. L. R.,* 940, where *Maule, J.,* says, "the plea of *liberum tenementum,* does not assert a freehold interest only, but present freehold, a right of immediate possession as against any other freehold." And *Coltman, J.,* who delivered the opinion of the court in that case, said, "we are of opinion, that if the freehold is in the lord, the tenant's interest must be of a subordinate nature, and must be replied, on the same principle on which a term of years must be pleaded in answer to a plea of *liberum tenementum.*" And in 1 *Chit. Pl.,* 503, it is thus stated: "In observing upon the qualities of pleas, we shall hereafter see that a special plea in trespass, which claims for the defendant a possessory right, and yet does not give the plaintiff express color, is bad, because it amounts to the general issue, and violates the principle that a plea must deny or confess, and avoid the matter alleged in the declaration. A plea of *liberum tenementum,* is free from this objection, because it gives apparent color, as it is not absolutely and manifestly inconsistent therewith, that the plaintiff might have had some inferior leasehold or minor title, in respect whereof he might have had possessory right or title, or at least, possession." And in treating of the plea of *liberum tenementum,* it is stated: "thus if the defendant be in reality the freeholder, so that the plaintiff cannot with safety deny the plea, he is driven to admit its truth, and to deduce a title from the defendant, as that he demised the close to the plaintiff," &c. And in page 595, "if the plaintiff derive title under the defendant, then he must not traverse his plea; but confessing the defendant's title, must reply the lease, or some other title under him, concluding with a verification."

But although the record, apart from the deed of conveyance by the trustee, is not under the pleadings in this cause, admisble in evidence of the possessory right thereunder acquired by the plaintiff; yet when offered with such deed of conveyance, it is competent testimony to go to the jury to shew, that the freehold, in the premises in question, is not in the defendant, but in the plaintiff. It is true, the present action was instituted on the 16th day of February 1844, a few days after the commission of the trespass complained of; and that the deed of conveyance from the trustee to the appellant, bears date on the ninth day of September, of the same year: some months after both the cause and commencement of the present action. This deed, however, does not operate to pass the freehold, merely from the time of its execution; but being a conveyance under a judicial sale, upon the principles of relation, it operates retrospectively, and vests the freehold estate in the premises, in the grantee from the date of the sale; and therefore disproves and defeats the plea of *liberum tenementum*, by shewing that, by operation of law, at the time the trespass was committed, the freehold was in the plaintiff. See *Viner's Abr., tit., Relation*, 290, and *Jackson vs. Ramsay*, 3 *Cowen*, 75, and the cases therein referred to.

It hence follows that the county court erred, in refusing to permit the record and deed offered in evidence, in the first bill of exceptions, to be read to the jury.

The court below did not err in refusing to permit the plaintiff, as against *Henry D. Hatton*, to give to the jury the testimony offered in the second bill of exceptions. The issue to be tried by the jury was, whether he, *Hatton*, had the freehold estate in the land in controversy. The testimony rejected, had no tendency to prove or disprove that fact. No such oral proof could transfer an estate in freehold, upon the plaintiff. It was therefore, as against *Hatton*, inadmissible under the issues in the cause. If the defendant, *Hatton*, had been the plaintiff in this suit, having sued *Hunter*, as a trespasser by reason of his entry on the plaintiff's freehold, under the circumstances in which it was made, as shewn by the testimony offered; the court would have held the plaintiff estopped, on the ground of

fraud, from denying the legality of the defendants entry, and from any recovery of damages on account thereof.

In what has been said of the decisions of the county court on the admissibility of the testimony offered in the two bills of exceptions, the remarks made were intended only to apply to *Henry D. Hatton*, and in reference to the issue joined upon his plea of *liberum tenementum*. As respects the defendant, *Kendrick*, whose only defence to the action was *non cul*, the testimony offered and rejected in both bills of exceptions ought to have been admitted. The plaintiff, to entitle himself to recover, was not bound to rely upon the mere fact of his possession, but might prove the legality thereof and his title to the premises. The damages which a jury would give to a plaintiff, a mere possessor, who exhibited neither evidence of title or right to possession, would, it is presumed, be very different in amount from those which would be given to a plaintiff whose possession was shewn to be rightful, his title undeniable.

There being, it is conceived, error in the decisions of the county court in both bills of exceptions, their judgment is reversed and a procedendo awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.