# THOMAS and SALLY PEARCE, Negroes, *vs.* JOHN VAN LEAR, JR.

A testatrix who died in 1828 directed her executors "to manumit by deed" all her slaves, leaving it to their "discretion" to do so "when they shall judge expedient and proper." In 1842 the negroes filed their bill in equity praying for the execution of the deeds of manumission. The Court of Appeals decided they were entitled to relief, and in 1850 passed a decree directing deeds to be executed to all *except two, who were infants of three and five years of age at the death of the testatrix,* which was accordingly done in 1851. HELD:

That by the construction given to this will by the decree of 1850, the deeds, when executed, confer freedom, *by relation from the death of the testatrix,* and the issue of the females so manumitted, born after the death of the testatrix and before the execution of the deeds, are entitled to freedom as born of free mothers.

Powers are to be liberally and equitably construed according to the intention of the party and to advance rights.

APPEAL from the Circuit Court for Washington county.

This was a petition for freedom, filed by the appellants in November 1851. The following clause in the will of Mrs. Mary Van Lear, who died in 1828, is the origin of the petitioners' claim: "It is my will, and I do hereby direct my executors to manumit, by deed, all the slaves which may be mine at the time of my death, whose age and health may be such as that their manumission may not be prohibited by law, leaving it to the discretion of my said executors to carry this clause into effect when they shall judge expedient and proper." The other facts of the case are fully stated in the opinion of this court, and in the case of *Peters, et al., vs. Van Lear, et al.,* 4 *Gill,* 249. The cause was submitted to the court below, (PERRY, J.,) upon a statement of facts. That court was of opinion the petitioners were not entitled to their freedom, and from this decision they appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Jervis Spencer* for the appellants.

1st. The mother of the petitioners took her freedom not under the deed of manumission as of the date thereof, but under the will, as if the deed had been incorporated in the will. By *relation* it is the same thing as if the will had directly manumitted her, in which event her after-born issue would have been free beyond all question. 9 *Gill,* 483, *Henderson vs. Jason.* An estate created by the execution of a power, takes effect in the same manner as if created by the deed which raises the power. 4 *Kent's Com.,* 337. 2 *Ves., Sen.,* 78, *Duke of Marlborough vs. Lord Godolphin. Ibid.,* 610, *Southby vs. Stonehouse.* 2 *Atk.,* 562, *Cook vs. Duckenfield. Ibid.,* 661, *Middleton vs. Crofts.* 7 *Johns. Ch. Rep.,* 45, *Doolittle vs. Lewis.* 3 *Do.,* 550, *Bradish vs. Gibbs. Tollers on Executors,* 306, 307. These cases show that the deed of manumission, when executed, *relates* back and takes effect as of the death of the testatrix. The issue of a slave specifically bequeathed goes to the legatee, (6 *G. & J.,* 190, *Evans vs. Iglehart;* 10 *G. & J.,* 458, *Sutton vs. Crain,*) so in the case of freedom, which is as much a specific legacy as if the negro was given to another.

2nd. It was manifestly the intention of the testatrix to secure the manumission of her servants. She never intended either them or their issue to be slaves. The executor was merely a trustee for the purposes of the will, and he could not delay the execution of the power under the will so as to make the issue his slaves. The power must be exercised according to the intent. 1 *Wm. Bl. Rep.,* 619, *Wilson vs. Sewell.* 3 *Madd. Ch. Rep.,* 254, *Mislington vs. Mulgrave, et al.* The power was not an arbitrary but an equitable one.

3rd. The Court of Appeals, by their decree in 1850, evidently regarded the deeds as conferring freedom *by relation as from the death* of Mrs. Van Lear, for their refusal to decree in favor of Isaac and Sophia could have been on no other ground than that the freedom was to take place at *that time,* and they were *then* too young under the laws of the State to receive freedom. The court in fact discriminate between

Pearce, *et al.*, *vs.* Van Lear.

those who were able to gain a maintenance and livelihood *at the time of Mrs. Van Lear's death*, and that those that *were not*, thus recognising the principle of relation contended for.

*William Price* for the appellee. The mother of the petitioners was manumitted upon *a contingency*, viz., *the execution of the deed of manumission by the executor*, and her freedom only commenced from the date of that deed. By the very terms, therefore, of the act of 1809, ch. 171, sec. 3, the issue born *before* the happening of the contingency are *slaves*. The case in 4 *Gill*, was one upon demurrer, and of course all the allegations of the bill, which stated a case of fraud, were admitted to be true. The decree there did not *give freedom*. The case was remanded in order that deeds of manumission *might be executed*. The doctrine of relation has no application. 2 *Sugden on Powers*, 26, (16 *Law Lib.*, 16.) It is simply the case of a manumission upon a contingency, and this contingency did not happen at the death of the testatrix, but only upon the execution of the deed of manumission by the executor.

TUCK, J., delivered the opinion of this court.

The mother of these petitioners, with other negroes of Mrs. Van Lear, filed their bill in equity claiming freedom under her will, and prayed that deeds of manumission might be executed by the appellee, as her executor. The Court of Appeals decided that they were entitled to relief, and remanded the cause, in order that deeds of manumission might be executed according to the will. See 4 *Gill*, 249. A decree was subsequently passed by Washington county court, as a court of equity, directing deeds to be executed to all the complainants, from which the present defendant in error appealed; and at December term 1850, that decree was reversed as to negroes Isaac and Sophia, who were three and five years old at the death of Mrs. Van Lear; and affirmed as to the other parties, including Margaret, the mother of the present petitioners, who received her deed of manumission

on the 1st April 1851. The appellants insist, that their mother was free as of the time of her mistress' death, and that they, having been born in the years 1841 and 1844, respectively, are entitled to their freedom as issue of a free mother.

No opinion was filed on the last appeal, nor does the decree assign any reason for the reversal as to Isaac and Sophia. The counsel for the appellants contends, that the fact that a distinction was made between them and the other complainants in that cause, demonstrates that the court considered that the deeds, when executed, would, by relation, confer freedom from the death of the testatrix; and that Isaac and Sophia were excluded because, by reason of their tender years, they were incapable of receiving freedom at that time; and several cases have been referred to for the purpose of showing that, according to the principles governing the execution of powers and trusts, the will before us must be so interpreted.

We deem it unnecessary to express an opinion upon these authorities, as we think that the Court of Appeals, when the case of *Peters, et al., vs. Van Lear* was last before them, virtually decided the point on which the right of these petitioners to their freedom must be determined. The will of Mrs. Van Lear was open to the construction contended for by the appellants' counsel, yet the case was not free from difficulty, according to the authorities cited on the present appeal. We are informed, (2 *Sugden on Powers*, 26,) that the doctrine of relation, applied to the execution of powers, so as to vest title as of the time of the creation of the power, was overruled by Lord Hardwicke, in the case of *Marlborough vs. Godolphin*, 2 *Vesey*, 78. It is true that in that case, it was said that where a person takes property under the execution of a power, it is held under the authority of that power, but not from the time of the creation of the power. But that was a case in which the rights of third persons had sprung up between the creation and the execution of the power, and the lord chancellor evidently places his decree on that ground.

We are not informed that it had been so decided before. It would seem, however, from Mr. Sugden's observation, that the contrary opinion had been maintained at the bar, if not affirmed by the courts in cases where the very point was presented. It was laid down, as law, in *Menvill's case*, 13 *Coke*, 19, "that sometimes, by construction of law, a thing shall relate, *ab initio*, to some intent, and to some intent not, to advance a right, as between the same parties, but not to advance a wrong, or to defeat collateral lawful acts, especially where strangers to the power are interested." This is recognised as the general principle in most of the cases, and in 2 *Vesey* it is not denied. Indeed the same learned chancellor, in 2 *Atkyns*, 568, *Cook vs. Buckenfield*, had said, "to A and such uses as he shall appoint, was good before the statute of uses and wills; for when A shall appoint the *cestui que use*, he is in by the feoffer, *from the beginning*, and not by the appointer." Chancellor Kent, in 20 *Johns.*, 537, *Jackson vs. Davenport*, which was also a case where intervening acts affecting strangers had occurred, recognised the doctrine laid down in 2 *Vesey*, as applicable to the case then before him; but he expressly declares, that he does not intend to deny the general doctrine that an estate takes effect at the execution of the power, as if created by the original deed, for which he refers to *Litt.*, *sec.* 169. *Coke Litt.*, 113, *a.* 2 *Atkyns*, 562, 567. But he says "this is only to certain purposes, and as between the parties, and not as to the intervening rights of strangers to the power." The subject is fully discussed, and the cases referred to. And in 4 *Kent's Comm.*, 339, we are told that the doctrine of relation, to the extent of affecting intervening rights, has been justly questioned, and would not now be permitted to have that effect; from which it may be inferred that, with this qualification, the principle of relation was recognised by him. In *Hunter vs. Hatton*, 4 *Gill*, 127, the doctrine was enforced where a party who sued as plaintiff in *trespass quare clausum fregit*, on an equitable title, afterwards obtained the legal title, and

the court held that he had the legal estate by relation before the suit was commenced.

We have referred to these decisions, not as authorities on which our judgment in this cause is predicated, but to show that the Court of Appeals might, upon adjudged cases, have applied the principles of relation to Mrs. Van Lear's will. Their opinion, in 4 *Gill*, 259, does not treat the will as conferring a merely naked power, but as clothing the executors with a trust which they were compelled to execute for the benefit of the negroes, (see the case in 4 *Madd. Rep.*, 254, referred to by the court,) a distinction on which some of the cases have turned.

It is easily perceived that if the executors had a right under the will to retain these negroes in the service of the estate, as long as it might be unsettled, and that they were then to take freedom under the deeds of manumission alone, and not from the time of Mrs. Van Lear's death, they might possibly never become free at all, although capable under the law of taking freedom at her death. This the testatrix never designed. It was manifestly her intention that all the negroes, capable at her death, should become free whenever the condition of the administration might sanction their discharge. While conferring this benefit on them, she wished to protect her executors from embarrassment by their immediately going at large. In the case of *Wilson vs. Barnet*, 8 *Gill and Johns.*, 159, and 9 *Do.*, 158, negroes were manumitted to be free at the death of the testatrix, unless her debts should require the sale of them. The law certainly gave the executor control over them until he should, in the exercise of his duty and in due course of administration, be able to ascertain whether the condition of the estate was such as to authorise his assent to their freedom. They ultimately, however, obtained their liberty. But a different result would be produced in this case by the construction contended for on behalf of the appellees. The act of 1796, ch. 67, declares that the party claiming freedom must be capable at the time the freedom shall commence. Now, supposing that the terms employed in the

will were intended merely to designate the description of negroes who were to become free under the deeds, whenever and only when they might be executed, if one of them had been forty years old at the death of the testatrix, and otherwise capable, and was not manumitted until after the lapse of five years, (and here twenty had expired before the execution of the deeds,) that negro could never have gone free at all. His freedom would have been prohibited by the law as it then stood under the acts of Assembly, though designed to have been conferred by the will, and so of the others. They were all liable to the same risk of losing their freedom, by disease or infirmity coming upon them while in the service of the estate, or by natural causes, every day's delay bringing them nearer to that period of life when the law would defeat the intention of their mistress in providing for their liberation. We cannot suppose that the testatrix contemplated any such violation of trust, in utter disregard of her beneficent purposes, by those whose duty it was to execute, not to defeat, the provisions of the will.

Powers are to be liberally and equitably construed according to the intention of the party, and to advance rights. 2 *Hilliard on Real Property*, 559. In view of this principle, and the construction that we think this will has received by the Court of Appeals, the judgment of the court below must be reversed and the petitioners declared free, as issue of a mother, who was entitled to freedom at the time of their birth.

*Judgment reversed and judgment for the petitioners.*