JAMES R. DAVIS and Others' Lessee *vs.* ANDREW
HELBIG.

*Legislative Power—Presumption of the Constitutionality of
Acts of the Legislature—Conversion of the Real Estate
of Infants into Personalty—Bona fide purchasers of Real
Property to be protected.*

The Act of 1845, ch. 253, entitled, "An Act for the relief of John L. Hook
and others, devisees of James Hook, late of Allegany County,
deceased," empowering Allegany County Court, sitting as a Court of
Equity, to decree in a suit therein pending, the partition of certain real
estate, &c., was a proper exercise of legislative power.

And by this Act, jurisdiction was conferred on the Court, to decree a sale
of certain property in the proceedings mentioned, provided they were
satisfied, by proof, that it would be advantageous to the infants.

The Acts of the Legislature are presumed to be *constitutional*, and it is
only when they manifestly infringe some of the provisions of the Con-
stitution, or violate the vested rights of the people, that their effect and
operation can be impeded by judicial power; for the act of a Legisla-
ture is not pronounced unconstitutional or invalid in a doubtful case.

The converting of realty into personalty has never been held as depriving
children of their property; by the exercise of such a power, minor
children are enabled to derive subsistence, comfort and education, from
their property, which otherwise might be wholly useless and unpro-
ductive.

The soundest principles of justice and policy demand that every reason-
able intendment should be made to support the titles of *bona fide* pur-
chasers of real property, under judicial sales, and Courts of Justice are
not disposed to impair their safety by insisting on matters of form;
they can only be avoided for substantial legal defects.

The titles of purchasers acquired under judicial sales are guarded with
jealous vigilance by Courts of Justice.

APPEAL from the Circuit Court for Allegany County.

This was an action of *Ejectment* brought by the appel-
lants to recover from the appellee parts of lots sixty-seven
and sixty-eight in Hook's Addition to the town of Cum-
berland. Plea not guilty. It was admitted at the trial
below that the legal title to the lands in controversy

was in James Hook, who died seized thereof, in his demesne as of fee, and who, prior to his death, executed a last will and testament, whereby among other things, he devised, after the death or marriage of his wife, a share in his estate, embracing real, personal and mixed, to his daughter, Matilda Jane Davis, in fee simple, but directed that two of his sons should hold said share, in trust, during her life, paying over to her from time to time, the rents, issues and profits thereof, and that after her death the estate so devised should be divided equally among all her children, share and share alike. The widow renounced the will and claimed her dower according to law. She, with the children of the testator being dissatisfied with the provisions of the will, entered into a family arrangement for the division of the estate devised, more agreeable to themselves, and which they considered more promotive of their welfare and happiness. It was also agreed that application should be made to Allegany County Court, as a Court of Equity, to settle the remainder, limited by the will to the children of Matilda Jane Davis, in such manner as should protect their rights and interests in the premises, and to appoint Thomas D. Davis, the husband of the said Matilda, her trustee, in lieu of her two brothers, appointed in that behalf by the will. In accordance with this arrangement, a bill was filed on the Equity side of the County Court of Allegany, to effectuate the same. The bill, among other things, alleged that a partition of the property had been made, by persons selected by the parties in interest, and prayed that the same might be ratified and confirmed, if deemed fair and just, and that a trustee for Mrs. Davis might be appointed in the room of those named in the will. The children of Mrs. Davis were made defendants, and they answered by guardian. A commission was issued and testimony was taken going to show that it would be for the interest of all parties that a partition of the property

should be made. After the return of this commission an order was passed, directing a commission to issue to make partition amongst the parties, according to their respective interests ; and the same was issued, duly executed and returned. The Court thereupon passed its order ratifying and confirming the partition and adjudging that Mrs. Davis and her children should hold in severalty that portion of the property, which by the return of the commissioners, was allotted to them, and appointing Thomas D. Davis her trustee instead of those named in the will. Shortly after his appointment he filed a petition setting forth the aforesaid decree of partition, as also showing that pending the proceedings, the Act of 1845, ch. 253, entitled, " An Act for the relief of John L. Hook and others, devisees of James Hook, late of Allegany county, deceased," was passed, whereby the Court was empowered to make partition of the real estate of the said James Hook, to appoint a trustee for Mrs. Davis, and upon the petition of any person, on behalf of her and her children, to sell, or to let their portion upon building or improvement leases, the Court being satisfied that it would be advantageous to the parties in interest so to do. Upon this petition the Court passed an order appointing the petitioner a trustee to sell or lease the said real estate. In pursuance of this order, the trustee sold Lots sixty-seven and sixty-eight, being in Hook's Addition to the town of Cumberland, to a certain Thomas Davis, and conveyed the same to him. Thomas Davis afterwards sold and conveyed parts of these lots, being the same sought to be recovered in this action, to James O'Dair, from whom the appellee purchased. At the trial below the appellee offered in evidence the record of the equity proceedings, the Act of 1845, ch. 253, the deed from Thomas D. Davis, trustee, to Thomas Davis, the deed from the latter to O'Dair, and the deed from O'Dair to the appellee. It was admitted that the widow of James Hook, and Mrs.

Matilda J. Davis, died before the institution of this suit, and that the appellants, Charles Hickman excepted, were the only children of Mrs. Davis, and that Hickman was the husband of one of the daughters. Four of the appellants were born after the passage of the decree appointing Thomas D. Davis trustee.

*Exception:* The plaintiffs prayed the Court to instruct the jury as follows :

1st. That if they find from the evidence in the cause, that the matters and things admitted in this cause are true, and that the proceedings in the case of partition offered in evidence were had, then the plaintiffs are entitled to recover, notwithstanding they may find that the petition of Thomas D. Davis offered in evidence, for Matilda Jane Davis and her children was filed, and the proceedings thereunder had, as offered in evidence by the defendant.

2d. That the petition of Thomas D. Davis for Matilda Jane Davis and her children, now offered in evidence, and the proceedings thereunder, if they shall believe them to have been had, and the deed of Thomas D. Davis under said proceedings now in evidence, do not prevent them from recovering the lands sued for in this action.

And the defendant offered the following prayer :

That although the jury shall find to be true all the facts admitted in this case *to be true*, still the bill of complaint, proceedings, decrees, and deed of the said Thomas D. Davis, as trustee, had in said case, and now offered in evidence, divest the legal title to the lots in controversy out of the lessors of the plaintiffs, if the jury shall find that the land now sued for is the same reported by Thomas D. Davis, trustee, as sold to Thomas Davis, and conveyed by Thomas D. Davis, as trustee, to Thomas Davis ; and that it is also part of the lands set-off in severalty, to Matilda Jane Davis and her children, and the plaintiffs are not entitled to recover in this case.

The Court (MOTTER, SPECIAL JUDGE,) rejected the prayers of the plaintiffs, and granted the prayer of the defendant; to this ruling the plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*J. H. Gordon* and *William Walsh*, for the appellants.

The only question in this cause was, whether the proceeding in the equity case, under the Act of 1845, ch. 253, divested the title of the infant and unborn children of Matilda Jane Davis, which was devised to them by their grandfather, James Hook. The will of James Hook, gave one fourth of his estate to trustees to hold for Mrs. Davis for life, and a vested remainder in fee to her children, subject to be opened to let in after-born children. And as all the parties were not in *esse*, the Court had no power prior to the passage of the Act of 1845, to decree a sale for those in existence. *Cochrane vs. Van Sarley*, 20 *Wend.*, 374.

The question therefore arises, whether the Act of 1845, and the proceedings thereunder, divested the title out of those infants and unborn children?

The original bill was filed 25th October, 1845, setting out the will of James Hook, and an agreement by which the devisees under the will had modified their rights under the will, stating also that a partition had been made of the property by parties agreed upon by the devisees, and praying that the partition so made should be ratified and confirmed. The first and second sections of the Act of 1845, apply to this part of the proceedings; they were ratified by the Court under the Act, and we are not now disposed to disturb that part of the case. The petition of Davis purporting to be under the third section of the Act of 1845, upon its face shows that neither the infants, nor their mother, were made parties to the peti-

tion.   This petition was filed after the final decree of
partition had been passed.   The decree is signed by the
judges, and then the record proceeds as follows:

*Thereupon* the said Thomas D. Davis, trustee, &c., by
William Price, his solicitor, files in the cause his petition,
&c.   This petition cannot be treated as a part of the former
cause under the bill.   The object of the bill had been fully
accomplished, and the parties were no longer in Court for
any purpose.   The petition, therefore, commenced a new
proceeding altogether, for a different purpose, and between
different parties, and must be governed by its own facts.
The Act of 1816, ch. 154, provided for the sale of the real
estate of which infants were possessed.   The Act of 1818,
ch. 193, sec. 7, extended this power to equitable estates.
The proceeding under the Act of 1816, was by petition by
the guardian or *prochein ami* of the infant, and after sum-
moning the infant, and his appearing by guardian to be
appointed by the Chancellor, and it appearing to the
Chancellor or County Courts that it will be for the interest
and advantage of the infants to sell such lands, to decree
a sale thereof.

The Act of 1818, ch. 133, sec. 2, provides as an addi-
tional protection of the infants, for the appointment of
commissioner to value the lands, and whether it would be
for the interest and advantage of the infants to have the
lands sold, and this is not conclusive, but the Court may
examine witnesses and use the ordinary means of informa-
tion to secure full protection to these wards.   But none of
these acts embraced the case of these children under this
will, because part of them were not in *esse*, and therefore
the Act of 1845 was passed to provide for this particular
case, as appears by its first section.   This Act of 1845
must therefore be interpreted as supplying a deficiency in
the Acts of 1816 and 1818, and making a part of a system
for this case, and the balance of the system of legislation
to be supplied by those Acts.   They being in *pari materia*,

must therefore be taken together as one law governing this case. That was manifestly the intention, as appears by the first section directing the proceedings in the case of partition, to be *according to the course of practice of Courts of Equity in this State.* Dwar. on Stat., 662, '3, 694, '5, '6, 699, 700, 701; *The Mayor, &c., of Balt., vs. Howard,* 6 *H. & J.,* 383; *Baltzell vs. Foss,* 1 *Har. & Gill,* 504, 506; *Act of* 1794, ch. 60, sec. 7; *Canal Co. vs. Railroad Co.,* 4 *G. & J.,* 128; *Hughes' Case,* 1 *Bland,* 46; *Magruder and Tuck vs. Carroll et al.,* 4 *Md. Rep.,* 348, 349; *Act of* 1849, ch. 229; *State vs. Mister,* 5 *Md. Rep.,* 14.

The special Act of 1845, not providing the necessary mode of proceeding, the same should have been according to the Acts of 1816 and 1818, as shown by 1 *Har. & Gill,* 506, *and Hughes' Case,* 1 *Bland,* 46; *State vs. Mister,* 5 *Md. Rep.,* 14; *Campbell vs. Lowe,* 9 *Md. Rep.,* 511; *Billingsley et al. vs. The State,* 14 *Md. Rep.,* 369, 375.

And neither the tenant for life, Mrs. Davis, nor those in remainder, her children having been made parties, the proceedings are void, and pass no title. *Blackwell on Tax Titles,* 184, '5; 1 *Daniels' Ch. Pl.,* 235, '6, '7, 240, '41, 274, 346, 347, 383; *Story's Eq. Pl.,* 159; *Conn et al. vs. Penn,* 5 *Wheat.,* 424; *Hollingsworth vs. Barbour,* 4 *Peters,* 471; *Jones vs. Kenny, Hardin,* 96; *Kinderhook vs. Claw,* 15 *Johnson,* 537; *Mills vs. Martin,* 19 *John.,* 33; *Goddard vs. Boston,* 20 *Pickering,* 409; *Hunter vs. Hatton and Kendrick,* 4 *Gill,* 115, 123; *Harvey vs. Thomas,* 10 *Watts,* 63.

The Declaration of Rights, sec. 21 of the old Constitution prevents the legislature from authorizing a sale, except in due course of legal proceedings according to the rules and forms established for the protection of private rights. Such an Act is not the law of the land. *Westervelt vs. Gregg,* 2 *Kernan,* 203; *Taylor vs. Porter,* 4 *Hill,* 140; *Vanzant vs. Waddel,* 2 *Yerger,* 270; *State Bank vs. Cooper et al.,* 2 *Yerger,* 605; *Tates' Ex'rs vs. Bell,* 4 *Yerger,* 202; *Officer vs. Young,* 5 *Yerg.,* 320; *Jones vs. Perry,* 10

*Yerg.*, 59 ; *Budd vs. The State*, 3 *Hump.*, 483 ; *Lane vs. Dorman*, 3 *Scam.*, 238 ; *Brown vs. Hummel*, 6 *Penn. State Rep.*, 86.

On general principles of law, any judgment or proceeding affecting a party's rights is void without notice. *Harris, vs. Hardeman*, 14 *How.*, 334 ; *Hollingsworth vs. Barbour*, 4 *Peters*, 466 ; *Denning vs. Corwin and Roberts*, 11 *Wend.*, 647 ; *Williamson vs. Berry*, 8 *How.*, 495 ; *Williamson et al. vs. Ball*, 8 *How.*, 290 ; *Wynehamer vs. The People*, 3 *Kernan*, 378 ; *Powers vs. Bergen*, 2 *Selden*, 358 ; *Digges' Lessee vs. Beall*, 1 *Har. & McH.*, 67 ; *Cecil vs. Cecil et al.*, 19 *Md.*, 73 ; *Clark & Jackson vs. Bryan & Lunt*, 16 *Md.*, 171 ; *McKim and Kennedy vs. Mason*, 3 *Md. Ch. Dec.*, 186 ; *The Regents of the University of Maryland vs. Williams*, 9 *G. & J.*, 408.

If no provision of the statute require notice, the fundamental principles of law and the nature of judicial proceedings require notice to the party whose person or estate is to be affected. *Eddy vs. The People*, 15 *Illinois*, 386 ; *Chase vs. Hathaway*, 14 *Mass.*, 222 ; *Shumway vs. Shumway*, 2 *Vermt.*, 339 ; *Holliday vs. Swailes*, 1 *Scam.*, 515 ; *Corliss vs. Corliss*, 8 *Vermt.*, 389 ; *State Bank vs. Marsh*, 2 *English*, (*Ark.*,) 390 ; *Brown vs. Wheeler*, 3 *Alabama*, 287 ; *Gwin vs. Vanzant*, 7 *Yerg.*, 143 ; *Cattin vs. Jackson*, 8 *Johns. Rep.*, 555, (*margin* ;) *Blackwell on Tax Titles*, 185, 213 ; *Dwarris on Statutes*, 766, 777.

Courts of general jurisdiction exercising special powers, are the same *quoad hoc* as Courts of inferior jurisdiction, and their authority must appear on the face of the proceedings. *Denning vs. Corwin and Roberts*, 11 *Wend.*, 647 ; *Williamson vs. Berry*, 8 *How.*, 494 ; *Williamson et al. vs. Ball*, 8 *How.*, 566 ; *Gallatian vs. Cunningham*, 8 *Cowen*, 361.

Statutory power must be strictly pursued. *Rex vs. Croke*, *Cowper*, 26 ; *Collett vs. Hooper*, 13 *Ves.*, 255 ; *Richter vs. Hughes*, 2 *Barn. & Cress.*, 499 ; *The King vs. The*

*Inhabitants of Washbrook*, 4 *Barn. & Cress.*, 732 ; *Stour-bridge Canal vs. Wheeley*, 2 *Barn. & Adol.*, 792.

*William J. Read* and *Thomas J. McKaig*, for the appellee, argued :

That the legislature had the constitutional power to pass the Act of 1845, ch. 253. The legislature of a State is invested with every power which is not prohibited by the Federal or State Constitutions.

There is no prohibition in our Constitution which was in force in 1845, to prevent the passage of such an Act. The Constitution of 1864, does contain such a prohibition. *Art. 3, sec.* 32.

The legislature of a State acts as *parens patriæ* to all of its subjects, who labor under legal disability. *Rice et al. vs. Parkman*, 16 *Mass.*, 326-328.

The object of the Act of 1845, was to relieve all the parties, and only authorized a conversion. The legislature had the undoubted power to pass the Act of 1845. 1 *Grant's Cases*, 232 ; *Kneass' Appeal*, 31 *Penna. Rep.*, 87 ; *Norris vs. Clymer*, 2 *Barr.*, 277 ; *Sergeant vs. Kuhn*, 2 *Barr.*, 393 ; *Wilkinson vs. Leland et al.*, 2 *Peters*, 627 ; *Dorsey vs. Gilbert et al.*, 11 *G. & J.*, 87 ; *Calder & Wife vs. Bull & Wife*, 3 *Dallas*, 386 ; *Rice et al. vs. Parkman*, 16 *Mass.*, 326 ; *Leggett vs. Hunter*, 19 *New York*, 445 ; *Florentine vs. Barton*, 2 *Wallace's Rep.*, 210.

The petition filed by Thomas D. Davis, on behalf of the infants, gave the Court jurisdiction.

The third section of the Act of 1845, authorizes any person on behalf of Matilda Jane and her children to file the petition. It does not require them to be made parties, but authorizes a petition to be filed on their behalf. When it was filed, they were in fact parties, and the law protected their interests by requiring proof, &c. See *the Act of* 1785, *ch.* 72, *sec.* 12. The omission in the Act of 1845 is conclusive.

The test, whether the Court had jurisdiction, is whether a demurrer would lie. *Tomlinson et al. vs. McKaig et al.,* 5 *Gill,* 256–276; *United States vs. Arredondo and others,* 6 *Peters,* 708.

It is the allegations which give the jurisdiction. The petition makes all the necessary allegations, and follows the Act in every particular. The legislature had power to sell the lots in controversy, without giving notice to the infants. *Price et al. vs. Parkman,* 16 *Mass.,* 331. The answer of an infant by guardian does not amount to anything. *Kent's Adm'rs and Boyle vs. Taneyhill,* 6 *G. & J.,* 1; *Harris vs. Harris,* 6 *G. & J.,* 111.

If the Court had jurisdiction on the petition of Thomas D. Davis, its proceedings cannot be inquired into, in this collateral suit. *Tomlinson et al. vs. McKaig et al.,* 5 *Gill,* 256, 276; *House vs. Wiles,* 12 *G. & J.,* 338. *Bona fide* purchasers of real estate should have the advantage of any doubt. *Van Ness et al. vs. The Bank of the United States,* 13 *Peters,* 21.

CRAIN, J., delivered the opinion of this Court.

Two questions present themselves for the consideration of the Court on this appeal. First: Whether the Act of the legislature, passed at December session, 1845, chap. 253, entitled, "An Act for the relief of John L. Hook and others, devisees of James Hook, late of Allegany county, deceased," was a proper exercise of legislative power; and, secondly, if so, whether the power conferred by the Act on the County Court of Allegany gave that Court jurisdiction, and authorized the decree, by virtue of which the property in controversy was purchased. The three sections of the Act very clearly designate the reason and object of its enactment; the authority granted by the Act was two-fold: to effect a valid division of the real estate among the devisees of James Hook, on their application for that purpose, at that time depending in the Court,

and also to transmute the share of the real estate to be allotted to Mrs. Davis and her children into personal property or money, provided the Court was satisfied it would be beneficial to all who were interested. The Acts of the legislature are presumed to be constitutional, and it is only when they manifestly infringe some of the provisions of the Constitution, or violate the vested rights of the people, that their effect and operation can be impeded by judicial power ; for the Act of a legislature is not pronounced unconstitutional or invalid in a doubtful case. The power to decree the sale of real estate of minors in special cases, was frequently exercised by the legislature of this State, and the power thus exercised was never successfully doubted or questioned by the profession or the Courts. See 11 *Gill & Johnson,* 87. The increasing necessity of these special Acts caused the legislature to enact the statutes of 1816, chapter 139, and 1818, chapter 133. These Acts conferred general powers on the Courts to decree sales of the real estates of infants, provided they were satisfied it would be for the interest and benefit of the minors. The constitutional right of the legislature to pass these special and general laws was conceded, as the State was considered the general guardian and protector of minors who were disabled to act for themselves, and the legislature, exercising this tutelary power over the persons and property of infants, claimed and exercised the right to provide by public or private Acts for converting real estate in which they had vested or contingent interests, into personal property and securities, when necessary for their benefit.

It was contended by one of the counsel for the appellants, that in virtue of the 21st section of the Bill of Rights, the legislature was prohibited from passing this Act, as by that section " no freeman ought to be deprived of his property, without the judgment of his peers, or by the law of the land." Surely this Act cannot be consid-

ered repugnant to that clause in the Bill of Rights; it did not propose to deprive the minors of their property, but was passed on the application of their father, representing that a sale of the property would be beneficial to the children and promotive of their interest, and it was therefore, we think, a just and proper subject for the exercise of the authority of the legislature as *parens patriæ*. The commuting of realty into personalty has never been held as depriving the children of their property ; by the exercise of such a power, minor children are enabled to derive subsistence, comfort and education from their property, which otherwise might be wholly useless and unproductive, and this power is asserted by Justice Grier, in delivering the opinion of the Court, in the case of *Florentine vs. Barton,* 2 *Wallace,* 210, where he says, "Statutes are found in almost every State in the Union, giving authority to guardians to sell the estates of their wards, subject to the supervision and approbation of a Court, and the power to grant such special authority to guardians has been generally admitted." This is not like the case of *Crane vs. Meginnis,* 1 *Gill & Johns.,* 463. In that case the legislature undertook to appropriate the money of Meginnis to Crane, and it was therefore an exercise by the legislature of judicial power, and repugnant to the Constitution. It was an attempt on the part of the legislative department of the government to encroach on a co-ordinate department, and for that reason the third section of the Act in that case was declared by the Court a nullity. Now, can it be said that this Act of Assembly has deprived any man of his property, or applied it to any other use than that of the children ? The sale of the property was in virtue of the exercise of the power vested in the legislative department, and which was not prescribed by the Federal or State Constitution. The views which we have expressed in this opinion of the constitutional power of the legislature to pass this Act,

are fully sustained by adjudged cases of our sister States. In 16 *Massa.*, 326, it was decided that "the legislature have power to license the sale of the real estate of minors, notwithstanding they have delegated the same power to the judicial Courts." In 19 *New York*, 463, Allen Justice, said, "The Courts have established this power by judicial decisions; and I think the legislature also had the power to direct as it did by the Act in question, a sale of the premises, so as to bind the interest of any posthumous children of the daughters, who on their birth would become interested in the remainder created in the will." And in 2 *Barr*, 277, Chief Justice Gibson, commenting on the same question, says, "The Act is constitutional, and the Court will enforce a contract of purchase from the trustees." Was the jurisdiction by this Act conferred on the County Court of Allegany to decree a sale of the property in controversy? The adult heirs of James Hook under the will had filed their bill for a division of the real estate among his devisees, when they applied for this special Act, to enable them to make the division valid, not only against the children in *esse* of Matilda Jane Davis, the tenant for life, but also against the after born children. We are satisfied, looking at the three sections of the Act, that it was the manifest intention of the law, that the whole interest of Matilda Jane Davis and her children in this property, was to be considered and acted upon by the Court, for by the Act the Court was authorized in their discretion to order and direct such amendments or modifications of the bill or other proceedings as they deemed necessary and proper to carry into effect the provisions of the Act. It is one entire Act, and the provisions are not limited to the first and second sections, but are equally applicable to the third section. All the parties interested in the property were before the Court, and after the ratification of the division among the devisees, the petition for the sale of the por-

tion alloted to Matilda Jane Davis and her children was filed in pursuance and by authority of the third section of the Act. According to the just construction of this Act, no power was conferred on the Court to decree a sale of this property unless they were satisfied by proof, that it would be advantageous to the infants. The Court expressly state in their decree, that it is based on the Act of Assembly and the affidavits filed in the proceedings; and the money arising from the sales was ordered to be brought into Court to be invested or otherwise disposed of under the direction of the Court. So that every safeguard was observed by the Court to protect the interest of the children. The legislature, having the right to pass the law, also directed how the act should be done; and the whole proceeding was under the special Act, and independent of the general Acts on the subject, and not to be controlled or governed by them; and the only question to be adjudicated by the Court was, whether the interests of the minors would be advanced by the sale. But it was contended by the counsel for the appellants that the Act and petition did not make a case of jurisdiction in the Court. It is said, in 5 *Gill*, 256, that the true test of jurisdiction will, in all cases, be found on the determination of the question, whether a demurrer will not lie to a bill? Tried by this test, we are of opinion that the Court would have determined that the Act conferred jurisdiction as "the power to hear and determine a cause is jurisdiction; it is *coram judice*, whenever a case is presented, which brings this power into action." *United States vs. Arredondo and others*, 6 *Peters*, 709. Admitting the jurisdiction, a decree without proof, or upon insufficient proof, is one in the exercise of jurisdiction, and can only be the subject of appeal or review. As this Court said in 4 *Gill*, 122, "they are irregularities and errors which could only be taken advantage of by the party aggrieved by them, on a re-hear-

ing, a bill of review, or an appeal in the cause in which they are found." A Court cannot examine into the merits of a decree collaterally, if it had jurisdiction ; and in 12 *Gill & John.*, 338, a record was admitted in evidence of the sale of infants' lands under a decree, although there was no evidence to prove the allegations, except the answer of the guardian of the infants. And in 6 *Gill & John.*, 1 and 111, it was held that the answer of the guardian of an infant is not evidence against him. The appellee in this case claims under a judicial sale, and the soundest principles of justice and policy seem to demand that every reasonable intendment should be made to support the titles of *bona fide* purchasers of real property, and Courts of justice are not disposed to impair their safety by insisting on matters of form; they can only be avoided for substantial legal defects. These principles of the law, applicable to judicial sales, have been frequently recognized and adopted by this Court, and in the case of *Eliott and Wife's Lessee vs. Knott*, 14 *Md. Rep.*, 121, it was ruled that an execution and sale of the real estate of a defendant in a judgment was valid against his infant child, although the defendant was dead on the day the *fi. fa.* was tested and issued, and this judgment of the Court was predicated on the case of *Jackson vs. Robins*, 16 *Johnson*, 582, which approved of the principle enforced by Lord Chancellor Redesdale in the case of *Bennett vs. Hammell*, 2 *Sch. & Lef.*, 566 ; in that case the Chancellor said " that there were irregularities in the proceedings, which he pointed out, and that the decree was erroneous, inasmuch as the infant ought to have a day to show cause against the decree when he comes of age. But he held that this was not to affect the purchaser's title. It would be too much, he thought, to say that a purchaser under a decree of that description could be bound to look into all these circumstances, and to go through all the proceedings, from the beginning to the end." Chief Justice

Le Grand, after quoting this opinion, with approbation, adds, " that Courts of justice guard and maintain with jealous vigilance, the titles of purchasers acquired under judicial sales."

For these reasons we are of opinion that the prayers of the appellants were properly rejected by the Court below, and concur with the Court in the prayer granted at the instance of the defendant, and therefore affirm the judgment.

*Judgment affirmed.*